# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BRAVE LAW FIRM, LLC,

        Plaintiff,

v.

TRUCK ACCIDENT LAWYERS GROUP,
INC.; BRAD PISTOTNIK LAW, P.A.;
AFFILIATED ATTORNEYS OF PISTOTNIK
LAW OFFICES, P.A.; BRADLEY A.
PISTOTNIK; and BRIAN D. PISTOTNIK,

        Defendants.

Case No. 17-CV-1156-EFM-GEB

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS BY BRADLEY A.
PISTOTNIK, BRAD PISTOTNIK LAW,
P.A., AND TRUCK ACCIDENT
LAWYERS GROUP, INC.**

Defendants, Truck Accidental Lawyers Group, Inc. ("TALG"), Brad Pistotnik Law, P.A.

("BPL"), and Bradley A. Pistotnik ("Brad") (collectively Defendants), respectfully move the Court

to, once again, dismiss the claims asserted against them by Plaintiff, Brave Law Firm, LLC

("Brave") for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P.

12(b), lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1), lack of specificity

required by FED. R. CIV. P. 9(b), and lack of Article III standing. In support of their Motion to

Dismiss, Defendants submit this Memorandum in Support and provide as follows:

## I.  INTRODUCTION

To loosely quote United States Senate Majority Leader Mitch McConnell, "nevertheless

[he] persist[s]." Congressional Record—Senate, Vol. 163, No. 20, part II, at S855 (February 7,

2017). Brave and its counsel Stephen L. Brave have engaged in a seemingly boundless crusade to

demean, disparage, harass, and attack Brad Pistotnik and any entity or individuals with whom he

has ever associated. Indeed, in addition to the present lawsuit, Brave, either on its own behalf, on

Mr. Brave's behalf, or on behalf of current and/or former Brave clients has repeated, *ad nauseum*,

allegations against Brad and others relating to advertisements for Brad's former firm, Affiliated Attorneys of Pistotnik Law Offices, P.A. ("AAPLO"), and Brad's current firm, BPL.  Since Mr. Brave abruptly severed his employment with AAPLO in 2010 (*see Stephen L. Brave v. Bradley A Pistotnik, Brian D. Pistotnik, Affiliated Attorneys of Pistotnik Law Offices, P.A., and Truck Accident Lawyers Group, Inc.*, No. 10-CV-2730 (Dist. Ct., Sedgwick County, Kansas)), Brave has peddled its scurrilous accusations concerning Brad and related entities in the following cases and/or proceedings:

- *Consolver v. Hotze*, No. 11-CV-3868, 2013 WL 9862175 (Dist. Ct., Sedgwick County, Kansas August 23, 2013), aff'd *Consolver v. Hotze*, 306 Kan. 561, 395 P.3d 405 (2017) (hereafter "*Consolver I*");

- *Consolver v. Pistotnik*, No. 115,197, 2017 WL 2715122 (Kan. App. June 23, 2017) (unpublished) (hereafter "*Consolver II*");

- *Hernandez v. Brad Pistotnik and Brian Pistotnik*, No. 15-CV-130-W (Dist. Ct., Cowley County, Kansas), venue transferred *Hernandez v. Brad Pistotnik and Brian Pistotnik*, No. 2016-CV-285 (Dist. Ct., Sedgwick County, Kansas);

- Disciplinary Complaint filed by Mr. Brave against Brad, No. DA 12,522, March 31, 2016;

- Complaint filed with the Sedgwick County District Attorney, Consumer Protection Division, dated March 25, 2016; and, most recently,

- *Eby v. Pistotnik*, No. 18-CV-1610 (Dist. Ct., Sedgwick County, Kansas).

Requiring a plaintiff to sufficiently plead its claims and injuries "assures that the plaintiff is not an intermeddler, but rather someone who truly has a personal stake in the outcome of the controversy." ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 2.3, 61 (3rd ed. 1999).  Professor Chemerinsky's observations are even more prescient in cases, like the present case, where the allegations sound in fraud:

> Some claims—like fraud—may have an *in terrorem* or stigmatizing effect on defendants and their reputations, and are often easily fabricated…. The courts expect pleaders to perform a greater pre-complaint investigation in such cases, to ensure that any such claim

> is responsible and supported, rather than defamatory and extortionate. This practice … guards against lawsuits filed in the unsubstantiated hope of discovering an unknown wrong (i.e., to disincentivize a "sue first, ask questions later" strategy)…. Thus, requiring that such claims be pleaded with particularity … helps safeguard the defendants against spurious accusations and resulting reputational harm … [and] reduces the possibility that a meritless fraud claim can remain in the case.

STEVEN BAICKER-MCKEE, WILLIAM M. JANSSEN, JOHN B. CORR, FEDERAL CIVIL RULES HANDBOOK 2017, 364-65 (2017) (citations omitted).

Brave's Amended Complaint, even more so than its first inadequate complaint, is riddled with spurious accusations advanced for the sole purpose of causing reputational harm, primarily to Brad. (*See*, *e.g.*, Doc. 38, ¶ 26, 33, 169, 170, 176). Brave's Amended Complaint does not cure the deficiencies identified by the Court in its order dismissing Brave's original complaint. Indeed, Brave's Amended Complaint should, for the reasons set forth in greater detail below, be dismissed because:

> (1)     Brave has not pled facts sufficient to establish Article III standing for its Lanham Act claim (*see infra* pp. 5-6);

> (2)     Brave, with respect to allegations applicable to all defendants and all potential alleged injuries, has not pled with the specificity required by Rule 9(b) (*infra* pp. 7-9);

> (3)     With respect to injuries allegedly related to Brave's representation of Mahnaz Consolver, Brave's Lanham Act claim is barred by the applicable statute of limitations (*infra* pp. 13-18); does not comply with Rule 9(b)'s heightened pleading requirement (*infra* p. 19); and does not identify any materially false advertisements upon which Ms. Consolver could possibly have relied in choosing AAPLO to represent her (*infra* pp. 19-25);

> (4)     With respect to injuries allegedly related to Brave's representation of Yudi and Ernesto Hernandez, Brave's Lanham Act claim lacks sufficient allegations to demonstrate proximate causation (*infra* pp. 25-28); is barred by the applicable statute of limitations (*infra* pp. 28-29), does not comply with Rule 9(b) (*infra* pp. 29-30); and, does not specifically identify any materially false

3

advertisements upon which the Hernandezes could possibly have relied in choosing AAPLO to represent Yudi (*infra* p. 30);

(5)    With respect to Brave's alleged injuries relating to its representation of Bridget Eby, Brave's Lanham Act claim fails because Brave has not alleged any facts plausibly demonstrating any injury proximately caused by Brad, BPL, and/or TALG (*infra* pp. 30-34);

(6)    Because Brave's Lanham Act claim is not sufficiently pled and should be dismissed, the Court should decline to exercise supplemental jurisdiction over Brave's state law claims (*infra* pp. 35-36);

(7)    Brave's tortious interference claim is still an insufficient, formulaic recitation of the elements of a claim and does not allege any facts sufficient to elevate the claim from merely possible to plausible (*infra* pp. 36-37); and,

(8)    Brave's civil conspiracy claim fails because it fails to plead facts demonstrating a required meeting of the minds to commit an underlying tort; fails for lack of damages proximately caused by the Defendants; and, fails because a corporate officer is legally incapable of conspiring with his corporation.  (*infra* pp. 36-39).

In its order dismissing Brave's original complaint, the Court, on its own accord, graciously granted Brave another opportunity to draft a pleading that meets the standards of Article III, Rule 8, and Rule 9(b).  Brave squandered that opportunity and its claims remain deficient.  Brave should not be given a third chance.  Thus, Defendants respectfully request Brave's Amended Complaint be dismissed, this time with prejudice.

## II.  APPLICABLE LEGAL STANDARDS

As in their first Motion to Dismiss, Defendants move to dismiss Brave's Amended Complaint pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6).  In the interest of brevity, to the extent brevity can be achieved when responding to a pleading containing 277 separately numbered allegations, Defendants adopt and incorporate by reference the applicable legal standards

previously set forth in Defendants' Memorandum in Support of their original motion to dismiss (Doc. 16, at 3-5) and the Court's order granting the same.  (Doc. 38, at 3-5).

## III.  BRAVE'S LANHAM ACT CLAIM SHOULD BE DISMISSED FOR NUMEROUS REASONS

### A.      Brave Still Lacks Article III Standing

In its order dismissing Brave's original complaint, the Court held "[b]ecause Brave has failed to allege a sufficient injury . . . [it] does not have Article III standing for [its] Lanham Act claim."  (Doc. 38, at 10).[1]  In response, Brave has now alleged injury in the context of its representation of three clients: Consolver, the Hernandezes, and Eby.  (See Doc. 38, ¶¶ 188-238).

Constitutional standing requires Brave to allege facts sufficiently demonstrating it has suffered: (1) "injury in fact—an invasion of a legally protected interest which is (a) **concrete and particularized** and (b) actual or imminent, **not conjectural or hypothetical**"—(2) which is "**fairly traceable**" to the challenged act, and (3) "likely" to be "redressed by a favorable decision." *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555,560-61 (1992)) (emphasis added).  Despite being granted a second opportunity to plead facts sufficient to establish standing for its Lanham Act claim, Brave has, once again, failed.

As set forth more fully below, Brave's claims regarding Consolver and the Hernandezes are barred by the applicable two-year statute of limitations (*infra* pp. 13-19, 28-29), insufficiently specific for purposes of FED. R. CIV. P. 9(b) (*infra* pp. 19, 29-30), and fail as a matter of fact and

---

[1] Defendants adopt and incorporate by reference, as if fully set forth herein, the applicable standards for reviewing whether Brave has pled facts sufficient to establish Article III standing set forth in their Memorandum in Support of Motion to Dismiss (Doc. 16, at 17-19) and this Court's order granting Defendants' first motion to dismiss.  (Doc. 38, at 6-7).

law based on the allegations within, and exhibits attached to, Brave's Amended Complaint.[2] (*infra* pp. 19-25, 30).  Because Brave fails to adequately plead an injury relating to its representation of Consolver and/or the Hernandezes that is likely to be redressed by a favorable decision, it has not alleged an injury in fact for purposes of Article III.  Brave's Lanham Act claim, as it relates to Consolver and/or the Hernandezes, should, therefore, be dismissed, with prejudice.

Likewise, also as set forth in greater detail below (*infra* pp. 30-35), Brave's alleged injury as it relates to Ms. Eby is not concrete and particularized but rather is horribly conjectural, hypothetical, and speculative.  In addition, an essential element of Brave's Lanham Act claim relating to its representation of Ms. Eby—that but for Defendants' alleged false advertisements Ms. Eby would have hired Brave, as opposed to some other attorney—is demonstrably false based on Brave's own allegations in its Amended Complaint and Brave's pleading filed in related litigation of which the Court can take judicial notice.  (*Infra* pp. 30-35).  As a result, Brave has not alleged facts sufficient to establish an injury in fact relating to Ms. Eby and its Lanham Act claim relating to her should be dismissed, with prejudice.

The following remains as true today as when first argued to the Court in October 2017:

> Requiring sufficient allegations of injury in fact "assures that the plaintiff is not an intermeddler, but rather someone who truly has a personal stake in the outcome of the controversy." ERWIN CHEMERINKSKY, FEDERAL JURISDICTION § 2.3, 61 (3rd ed. 1999). "[A] mere interest in a problem, no matter how long standing …, is not sufficient." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972). Brave's threadbare, conclusory allegations demonstrate it is the proverbial "intermeddler" with no personal stake in the outcome of this litigation.

---

[2] In addition, with respect to the Hernandezes, Brave has pled no facts alleging any injury that was, or could possibly have been, caused by Brad and/or TALG.  (*See infra* pp. 19-25).

(Doc. 16, at 19).  While Brave's original complaint failed to allege any facts from which the Court could discern an injury in fact for purposes of Article III, its Amended Complaint pleads facts that simply do not establish Article III standing.  Brave has been granted two chances to plead facts demonstrating standing and has failed in both attempts.  Its Amended Complaint should be dismissed, with prejudice.

**B.**     **Brave's Amended Complaint Remains Deficient Pursuant to FED. R. CIV. P. 9(b)**

In its Order granting Defendants' motions to dismiss, the Court held as follows:

> FED. R. CIV. P. 9 applies a heightened pleading requirement to certain claims, including those sounding in fraud or mistake.  Under this rule, a party "must state with particularity the circumstances constituting fraud or mistake." . . . Brave concedes that Rule 9(b) applies to its Lanham Act claim in this case, and the Court agrees. Brave has alleged that Defendants designed the advertisements "to intentionally mislead consumers in order to hire them," and that the advertisements "actually deceived a substantial segment of the audience and were intentionally designed to do so."  These allegations sound in fraud.

(Doc. 37, at 13-14) (citations omitted).

Brave's Lanham Act claim in its Amended Complaint likewise sounds in fraud.  (*See*, *e.g.*, Doc. 38, ¶ 182 ["Defendants' false advertising practices were fraudulent in nature . . . ."]).  Thus, as in the first instance, Brave's amended Lanham Act claim must "meet the heightened pleading standard of Rule 9(b)[,]" the requirements of which have previously been set forth by the Court:

> "[A] party alleging fraud must describe the circumstances of the fraud, i.e., the **time**, place, and **content** of the false representation; the **identity** of the person making the representation; and the harm caused by the complainant's reliance on the false representation." Furthermore, with regard to the "who" element, a plaintiff "**must set forth separately the acts complained of by each defendant** to satisfy the particularity requirement."

(Doc. 37, at 14-15) (emphasis added).[3]

Originally, Brave's Lanham Act claim failed to satisfy Rule 9(b)'s heightened pleading requirements because it failed to allege the who, when, where, or how with respect to its allegations of deceptive advertising and diversion of clientele from Brave. (Doc. 37, at 15). Brave's Amended Complaint fares no better.

In an attempt to cure the deficiencies of its first complaint, Brave identifies advertisements run by one or more of the Defendants at various points in time through various media which allegedly contain false or misleading information in the form of five verdicts and/or settlements which Brave claims were and are falsely advertised by Defendants:  (1) a $9,000,000 settlement (Doc. 38, ¶¶ 81-84, 128-131); (2) a $4,100,000 verdict and $2,500,000 in punitive damages (*Id.*, ¶¶ 87-100, 132-140); (3) a $2,400,000 verdict (*Id.*, ¶¶ 101-114, 141-147); (4) a $1,100,000 verdict (*Id.*, ¶¶ 109-114, 154-158); and (5) a $2,100,00 verdict.[4] (*Id.*, ¶¶ 148-153).  Then, with regard to alleged injuries suffered by Brave, it identifies former clients of Defendants who hired Brave after terminating their relationship with one or more of the Defendants.  (*See* Doc. 38, ¶¶ 187-238).

Brave's amended Lanham Act claim fails, however, because for each alleged client who hired one or more of the Defendants instead of Brave, Brave fails to identify any *specific* false advertisement(s) on which the client relied in selecting AAPLO or BPL to represent him or her;

---

[3] Defendants adopt and incorporate by reference, the Rule 9(b) standards and authorities set forth in their Memorandum in Support of Motion to Dismiss Brave's original complaint.  (Doc. 16, at 11-17).

[4] In addition, Brave alleges Defendants ran additional ads falsely advertising verdicts and/or settlements of $6.0 million, $845,000, $401,000, $1.6 million (*Id.*, ¶¶ 116-117, 160-161). Brave, however, fails to allege any facts explaining *why* those advertised amounts are false, *when* specifically they were run, in what medium, i.e., *how*, specifically they were run, which defendant, i.e., *who*, specifically communicated these alleged verdicts, or that any former client of defendants relied on these unspecified figures when selecting counsel.  Brave's allegations regarding these advertised verdicts and/or settlements, therefore, fail to satisfy Rule 9(b)'s heightened pleading requirements.

fails to *specify* when the specific advertisement(s) on which the client allegedly relied were communicated; and fails to *specify* who among the Defendants communicated false information to the client on which the client relied.  *See*, *e.g.*, *Integrated Business Technologies, LLC v. Netlink Solutions, LLC*, No. 16-CV-048-TCK-PJC, 2016 WL 4742306, at *5 (N.D. Okla. Sept. 12, 2016) (Pleadings are insufficient under Rule 9(b) unless they specify "who made the false statements, what the false statements were, when the false statements were made, or specifically why the statements were false.")

As a result, and for the same reasons set forth in the Court's order dismissing Brave's original complaint, Brave's Amended Complaint should be dismissed, with prejudice, for failure to meet Rule 9(b)'s heightened pleading standard.

## C.     Brave Fails to Allege Facts Sufficient to Demonstrate an Injury in Fact Proximately Caused by Any Defendant

In dismissing Brave's first complaint, the Court held, in relevant part, as follows:

> [F]or a plaintiff to establish injury, the complaint must set forth more than conclusory allegations.  Instead, the complaint must allege some factual matter supporting a reasonable inference that the plaintiff was injured by the defendant.  Brave has made no such allegations in its Complaint.  It has not alleged that potential clients chose Defendants as opposed to its legal services when seeking representation.  It has not alleged that it lost revenue because of Defendants' advertisements. . . . [T]he Court concludes Brave has failed to allege an injury in fact.

(Doc. 37, at 10-11) (footnote omitted).  Though Brave failed to plead sufficient facts to establish Article III standing, the Court granted Brave leave to amend "to properly allege an injury in fact, traceable to [Defendants'] false advertising, that is redressable by a favorable ruling . . . ."  (Doc. 37, at 11).

Graced with this opportunity to rescue its ill-pled claims, Brave now alleges three clients and/or client groups were deceived by Defendants' allegedly fraudulent advertising and thus hired

9

one or more of the Defendants as opposed to hiring Brave.   (See Doc. 38, ¶¶ 188-238). Notwithstanding the second opportunity to plead facts sufficient to demonstrate plausible injury in fact and proximate causation, Brave has, once again, failed.

> **1.**   **Brave Fails to State a Claim for Violation of the Lanham Act Relating to Mahnaz Consolver**

> **a.**   ***Facts Relating to Representation of Consolver***

Brave generally alleges Ms. Consolver hired AAPLO to represent her in relation to injuries suffered in an automobile accident.   (Doc. 38, ¶ 189).   Brave's remaining allegations concerning Ms. Consolver, however, are intentionally vague and misleading.   Fortunately, the circumstances surrounding AAPLO's representation of Ms. Consolver and subsequent litigation between AAPLO and Brave regarding AAPLO's attorney lien are a matter of public record and establish that Brave's Lanham Act claim regarding Ms. Consolver is barred by the applicable statute of limitations and fails as a matter of fact and law.

Ordinarily, consideration of material outside of the pleadings requires the Court to convert a motion to dismiss into one for summary judgment and afford the parties notice and opportunity to present relevant evidence.   However, facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004) (citing 27A Fed. Proc., L.Ed. § 62:520 (2003)); *Tal v. Hogan*, 453 F.3d 1244, 1265 (10th Cir. 2006), *cert. denied*, 549 U.S. 1209 (2007)).   "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."   *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001).   The court may also take judicial notice of state court filings. *See Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008); *Columbian Fin. Corp. v. Bowman*, No.

14-2168-SAC, 2018 WL 2267667, at *2–3 (D. Kan. May 17, 2018) (taking judicial of documents from state administrative proceeding).

In the present case, facts relevant to Brave's Lanham Act claim are set forth in two Kansas state court opinions: *Consolver I* and *Consolver II*. The Court may and should take judicial notice of the holdings in those cases.

*Consolver I* dealt with resolution of the attorney's lien filed by Brad on behalf of AAPLO with respect to recovery by Ms. Consolver in her personal injury action. *Consolver I*, 395 P.3d at 407; (*see also* Doc. 38, ¶ 194). As set forth in Brave's Amended Complaint, Consolver hired Brad, on behalf of AAPLO, to represent her with respect to her personal injury claim in April 2011. *Id.* In May 2012, the parties to the case participated in mediation through which Brad secured an agreement from defense counsel to proffer a $300,000 settlement offer upon satisfaction of various contingencies. *Id.* On June 28, 2012, the defendant's attorney communicated to Brad that he expected to receive authority to offer the $300,000 settlement soon thereafter and, on June 30, 2012, ultimately extended that offer to Brad. *Id.* at 407-408. In the interim, however, Consolver terminated AAPLO's representation, without cause, on June 28, 2012. *Id.* At the time she terminated AAPLO's representation, the "pretrial conference was fast approaching" and Consolver was "aware Pistotnik's contingency fee rose to 40 percent when the case reached the pretrial stage." *Id.* at 408.

Consolver hired Brave on the same day that she terminated AAPLO, June 28, 2012. *Id.* On July 2, 2012, Brad, on behalf of AAPLO, filed notice of the firm's attorney lien on the tendered settlement offer of $300,000. *Id.* After taking over representation, Brave conducted additional discovery, obtained different experts, and raised a new argument that arbitration was binding on the insurance company. The district court ruled against Consolver on that argument and further

held Brave "added no value to the settlement of this case." *Consolver v. Hotze*, No. 11-CV-3868,

2103WL9862175, at *10 (Dist. Ct., Sedgwick County, Kansas Aug. 23, 2013); *see also Consolver*

*I*, 395 P.3d at at 408-409.  Brave eventually settled the case for $360,000 and the $60,000 increase

from the last offer made to Brad was the result of Consolver securing employment, thus increasing

the defendant's potential exposure for lost income.  *Consolver I*, 395 P.3d at 409.

The Kansas Supreme Court affirmed the district court's holding that AAPLO was entitled

to a 90% recovery on the $300,000 settlement offer obtained by Brad on Consolver's behalf.  *Id.*

at 412.  Specifically, the court held, in relevant part, as follows:

> The district court found that Pistotnik had completed 90 percent of
> the work necessary to generate the $300,000 settlement offer which,
> though rejected, ultimately culminated in a much larger settlement
> of $360,000.   The district court looked to the contingency fee
> agreement as a reasonable economic indicator of the value of that
> $300,000 settlement and prorated that value according to the amount
> of work Pistotnik had provided as determined factually by the court
> after hearing all of the evidence.
>
> . . .
>
> [O]ur review of the record indicates that the equities weigh in favor
> of Pistotnik, further supporting the district court's decision.
> According to the district court's findings, Consolver was aware that
> Pistotnik's contingency fee was about to increase at the time she
> discharged him.  It makes sense that courts of equity would not
> permit clients to abuse their power to unilaterally terminate an
> attorney's representation in order to manipulate a contingency
> agreement that was freely entered into.

*Id.* at 412-413 (citation omitted).

*Consolver II* involved an appeal from a district court decision dismissing claims brought

by Consolver against Brad, including a breach of contract claim and a claim for violating the

Kansas Consumer Protection Act ("KCPA"), K.S.A. 50-623, *et seq.*  *Consolver II*, 2017 WL

2715122, at *1.  On July 9, 2015, Consolver filed suit on behalf of herself and a similarly situated

class of individuals against Brad and AAPLO but subsequently, to Consolver's detriment, Brave,

as counsel for Consolver, dismissed AAPLO as a defendant.  The court correctly noted Consolver

entered into a fee agreement with AAPLO, which Brad signed on AAPLO's behalf, to represent

her in her personal injury case.  *Id.*  Although Brad was the only AAPLO attorney to perform any

legal work on Consolver's behalf, the court dismissed Consolver's breach of contract claim against

Brad because Consolver "did not claim some basis for looking behind the corporate form to hold

[Brad] personally liable . . . ."  *Id.* at *2.

For her KCPA claim, Consolver alleged, among other allegations, that Brad violated the

KCPA through false and deceptive legal advertising.  *Id.* at *3.  In affirming the dismissal of

Consolver's KCPA claim, the court held as follows:

> The district court properly granted the motion for judgment on the
> pleadings as to those claims Consolver based on the law firm's
> purportedly deceptive advertising. For purposes of the KCPA,
> *Consolver became aggrieved as a result when she selected
> Pistotnik's law firm out of the universe of available law firms to
> represent her.*  That's true even though she paid no fees to the law
> firm at that time.  Rather, *taking the allegations as true, Consolver
> was gulled out of a fair opportunity to select a different lawyer*—a
> harm the KCPA presumably would recognize as actionable, thereby
> allowing the consumer to recover a statutory civil penalty and
> attorney fees at a minimum.
>
> . . .
>
> The contract was signed on April 1, 2011.  Consolver did not file
> this action until July 9, 2015.  The action, therefore, was commenced
> beyond the 3–year statute of limitations as to those claims, and the
> district court properly dismissed them.

*Consolver II*, 2017 WL 2715122, at *4 (emphasis added).  Consolver did not petition the Kansas

Supreme Court to review the Court of Appeals' opinion and the mandate issued on July 31, 2017.

### b.     Brave's Lanham Act Claim Relating to Consolver Is Barred by a Two-Year Statute of Limitations

Because the Lanham Act provides no express statute of limitations for filing false

advertising claims, it is appropriate for the Court to utilize the most closely analogous state

limitations period.  *See Reed v. United Transp. Union*, 488 U.S. 319, 323-24 (1989).  Courts that have considered this issue have uniformly applied the statute of limitations applicable to claims for fraud.  *See, e.g.*, *PBM Products, LLC v. Mead Johnson Nutrition Co.*, 678 F.Supp.2d 390, 404 (E.D. Va. 2009); *Gordon and Breach Science Publishers S.A. v. American Institute of Physics*, 859 F.Supp. 1521, 1529 (S.D.N.Y. 1994) (collecting cases in which courts have applied the fraud statute of limitations to Lanham Act false advertising claims); *see also Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 723 F. Supp. 567, 569 (D. Kan. 1989) (recognizing, without discussion, plaintiff's Lanham Act claim is subject to the two-year statute of limitations applicable to fraud and/or claims for personal injury not sounding in contract for which no limitations period is provided by statute).  Here the Court should, consistent with the overwhelming number of courts to have addressed this issue, apply Kansas's two-year statute of limitations for fraud, KAN. STAT. ANN. § 60-513(a)(3), to Brave's Lanham Act claims.

Applying the two-year statute of limitations to Brave's alleged injury relating to Ms. Consolver reveals any recovery is time barred.  Ms. Consolver hired AAPLO in April 2011, thus any alleged fraudulent advertisements that caused Ms. Consolver to hire AAPLO[5] must have been seen or heard by Ms. Consolver prior to that date.  It follows, therefore, that any injury to Brave, i.e., Ms. Consolver's selection of AAPLO rather than Brave, occurred, if at all, more than six years prior to Brave filing suit in this case.

The two-year statute of limitations for fraud does not, however, begin to run until the fraud is discovered.  KAN. STAT. ANN. § 60-513(a)(3).  Brave seeks to take advantage of this provision by alleging "[t]he Defendants' wrongful conduct was not reasonably ascertainable until November

---

[5] Brave fails to identify any *specific* alleged false advertisement that deceived or otherwise gulled Ms. Consolver into hiring AAPLO.  (*See* Doc. 38, ¶ 189).

of 2016, and, thus, the 'fact of injury' was not known to the Plaintiff until then.  The Defendants'
false advertising practices were fraudulent in nature and the Plaintiff did not actually discover this
fraudulent conduct until 2016."  (Doc. 38, ¶¶ 181-182).

Brave's allegations regarding its alleged discovery of its injury and its alleged discovery
of Defendants' so-called "fraudulent" conduct, however, are merely conclusory allegations with
no facts from which the Court can discern if they are plausible.  The Court must disregard Brave's
conclusory allegations.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  In any event,
uncontroverted facts derived from the *Consolver I* and *Consolver II* decisions, coupled with
Brave's own allegations in its Amended Complaint, bely Brave's contention that Defendants'
alleged fraud and Brave's alleged injuries were not reasonably ascertainable until November 2016.

Ms. Consolver hired Brave on June 28, 2012, more than five years prior to suit being filed
in the present case.  *Consolver I*, 395 P.3d at 408.  Brave filed suit on behalf of Consolver and a
class of similarly-situated individuals on July 9, 2015.  *Consolver II*, 2017 WL 2715122, at *1.  In
*Consolver II*, among other claims, Brave asserted a KCPA claim against Brad relating to Brad's
advertisements on behalf of AAPLO.  *Id*.  In that case, as here, the claims were premised on the
general proposition that "Consolver was gulled out of a fair opportunity to select a different lawyer
. . . ."  *Id*. at *4.  Here, by contrast, Brave alleges *it*, as opposed to Consolver, was the party injured
by the alleged false advertisements.  The alleged act or acts causing Brave's injury—Defendants'
advertisements—thus were known to Brave at some point prior to him filing suit on Consolver's
behalf on July 9, 2015.

Kansas courts have held that "'[i]n an action for relief on the ground of fraud the statute of
limitations does not start to run until the plaintiff discovers the fraud, *or until he learns such facts
as would lead a reasonably prudent person to investigate*.' [Citations omitted.]"  *Robinson v. Shah*,

23 Kan.App.2d 812, 825, 936 P.2d 784 (1997) (emphasis added).  Any advertisement that serves as a basis for Brave's claim of injury relating to Ms. Consolver was necessarily published prior to April 2011.  Indeed, Brave alleges Defendants "inundated" the Wichita market with false and fraudulent advertisements since at least 2007.[6]  (*See*, *e.g.*, Doc. 38, ¶¶ 53-182).  At minimum, Brave should have been aware of facts—*i.e.*, Defendants' advertisements and Ms. Consolver's alleged reliance on the same—that would lead a reasonable person to investigate at or near the time Brave commenced representing Consolver in 2012.  Indeed, *Consolver II* demonstrates Brave did, in fact, investigate Defendants' alleged deceptive advertising in advance of filing suit in July 2015.[7]

Kansas law further provides a cause of action for fraud does not accrue until an *injury* is reasonably ascertainable.  *See* KAN. STAT. ANN. § 60-513(b).  For purposes of this "discovery rule," an injury is "reasonably ascertainable" when "the plaintiff knew or could reasonably have been expected to know of the alleged . . . wrongful act."  *Vore v. U.S. Bank, N.A.*, No. 90,734, 2004 WL 324418, at *5 (Kan. App. Feb. 20, 2004) *rev. denied*, 278 Kan. 852 (2004) (unpublished). "The term 'reasonably ascertainable' carries with it an obligation to investigate available factual resources."  *Vore*, 2004 WL 324418, at *5; *see also Leathers v. Leathers*, No. 08-1213-MLB, 2012 WL 1935021, at *3 (D. Kan. May 29, 2012) (citing *Vore* for this principle).

---

[6] Notably, counsel for Brave was an associate at AAPLO from 2007 through 2010.  *See*, *e.g.*, *Brezjanovic v. Geico Gen. Ins. Co.*, No. 10-1020-WEB-KMH (D. Kan.) (Doc. 1: Complaint filed by "Bradley A. Pistotnik and Stephen L. Brave, of Affiliated Attorneys of Pistotnik Law Offices, P.A." on January 21, 2010); *Gorges v. Life Care Ctrs. of Am.*, No. 07-1305-JTM (D. Kan) (Doc. 4: Scheduling Order entered November 27, 2007, identifying plaintiff's counsel as "Brad Pistotnik" and "Steve Brave").  "[T]he court is permitted to take judicial notice of its own files . . . ."  *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001).

[7] Moreover, Brian Pistotnik authored the blog identified as Exhibit 8 to Brave's Amended Complaint, which allegedly explains supposed deceptive advertising practices of Defendants, and on which Brave relies to establish his claims, on May 10, 2015.  (Doc. 38, ¶ 53; Doc. 38-8).

Fact of injury becomes reasonable ascertainable either when the alleged tortious conduct has *first caused substantial injury or at the point when the plaintiff either knew or reasonable should have ascertained that the alleged tortious conduct caused plaintiff to be injured.* *Rigby v. Clinical Reference Lab., Inc.*, 995 F. Supp. 1217, 1222 (D.Kan.1998) (citing KAN. STAT. ANN. § 60–513(b)).  "'[S]ubstantial injury' means an injury for which a legal action lies," that is, an actionable injury.  *Moss v. Mamalis*, 36 Kan.App.2d 151, 155, 138 P.3d 380 (2006) (citations omitted).  The term "substantial injury" is not intended to imply that a plaintiff must have knowledge of the full extent of its injuries before the statute of limitations begins; rather, it simply must have "sufficient ascertainable injury to justify an action for recovery of the damages." *Rigby*, 995 F. Supp. at 1222 (quoting *Roe v. Diefendorf*, 236 Kan. 218, 689 P.2d 855 (1984)).  In determining the date upon which an injury is reasonable ascertainable, a court must "invoke an objective standard based on an examination of all the surrounding circumstances." *Id*.  Further, "Kansas law does not require that the plaintiff have ironclad actual knowledge about his injury, but rather he have such notice as would permit him to discover the injury with the use of due diligence.  'Reasonably ascertainable' does not mean 'actual knowledge.'" *Austin v. U.S. Bank, Nat'l Ass'n.*, No. 03–4130, 2006 WL 980739, at *11 (D. Kan. Jan. 25, 2006).

That Brave alleges it did not have actual knowledge of Defendants' alleged fraudulent conduct or the precise nature or the extent of its injury until November 2016 does not negate Brave's own allegations that Defendants' alleged fraud was reasonably ascertainable commencing in 2007 and Brave's injury was reasonably ascertainable to it commencing representation in June 2012 when Ms. Consolver hired him.  *See Benne v. Int'l Bus. Machs*. Corp., 87 F.3d 419, 427 (10th Cir.1996) (holding that the plaintiff's knowledge that her injury was somehow associated with the defendant, not her knowledge of the exact nature of her injury, commenced the running of the

statute of limitations). "If plaintiffs were allowed to wait to commence suit until directly confronted with evidence of [fraud], the statute of limitations would almost never begin to run." *Kelley v. Barnett*, 23 Kan.App.2d 564, 932 P.2d 471, 476–77 (1997).

Brave's numerous allegations permeating its Amended Complaint regarding the timing and breadth of Defendants' alleged fraudulent advertisements demonstrate Brave knew or reasonably should have known of Defendants' alleged fraudulent conduct commencing in 2007. Moreover, evidence of Brave's alleged injury caused by Defendants' alleged fraudulent conduct, all of which had to predate Ms. Consolver hiring AAPLO in 2011, was either known or reasonably should have been known to Brave when it commenced representing Ms. Consolver in June 2012 or soon thereafter. By that time, Brave had "such notice as would permit him to discover the [alleged] injury with the use of due diligence." *Austin*, 2006 WL 980739, at *11. Indeed, Brave alleges "[b]ut for Defendants [sic] . . . conduct carried out in violation of the Lanham Act, the $97,101.98 in fees and expenses paid to Defendants [on the AAPLO lien] would have been paid to the Brave Law Firm, LLC, and Plaintiff has been damaged in that amount as a result of their wrongful fraudulent conduct." (Doc. 38, ¶ 201). In other words, Brave's purported injury under the Lanham Act regarding Ms. Consolver's choice of counsel materialized on the date on which AAPLO and/or Brad prevailed on their attorney's lien, which was <u>August 23, 2013</u>. *Consolver*, 2013 WL 9862175. Thus, Brave had **actual, concrete knowledge** of his alleged Lanham Act injury on that date, roughly four years prior to filing suit in this case.

Brave's Lanham Act claim as it relates to his alleged injury concerning the Consolver representation must be dismissed because it is barred by the applicable statute of limitations. Even if not dismissed for this reason, it should be dismissed for the additional reasons set forth below.

   c.   *Brave's allegations regarding Consolver lack the specificity required by Rule 9(b)*

Brave alleges Consolver hired AAPLO to represent her <u>in April 2011</u> "[a]s a result of being exposed to and believing that *the false advertisements described herein were true*." (Doc. 38, at ¶ 189) (emphasis added).   With respect to Ms. Consolver, Brave concludes "because Ms. Consolver had been enticed by *the false and fraudulent advertising scheme perpetuated by Defendants AAPLO, Bradley A. Pistotnik, TALG[,] and Brian D. Pistotnik*, Plaintiff's recovery was reduced . . . ." (Doc. 38, at ¶ 199) (emphasis added).

The Court previously dismissed Brave's Lanham Act claim under Rule 9 because allegations against "Defendants" in the collective "does not specifically allege 'who' ran these advertisements . . . ." (Doc. 37, at 15).  With the above-referenced allegations, it is impossible to discern whose advertisement and/or advertisement(s) allegedly deceived Ms. Consolver, on what medium the specific advertisements on which Ms. Consolver allegedly relied were communicated, or when the allegedly false advertisement was communicated to and received by Ms. Consolver prior to her hiring AAPLO as her counsel.  For the same reasons set forth in the Court's original order dismissing Brave's Lanham Act claim pursuant to Rule 9(b), Brave's amended claim as it relates to Ms. Consolver must likewise be dismissed.

   d.   *Brave Specifies No False Ads on Which Consolver Could Have Possibly Relied*

At best, Brave's allegations regarding Ms. Consolver reveal that any advertisement upon which she relied in selecting AAPLO to represent her must have been published prior to <u>April 2011</u>.  In the Amended Complaint, Brave identifies several advertisements run by one or more of the Defendants prior to April 2011.  For example, Brave alleges Exhibit 9 was run by AAPLO in the September 2007 AT&T phone book.  (Doc. 38, ¶ 13).  Brave alleges Exhibit 10 is AAPLO's results page appearing on the firm's website beginning in 2010.  (*Id*., ¶ 78).  And Brave alleges

19

Exhibit 11 is TALG's advertised results page from its website beginning in 2010.  (Doc. 38, ¶ 79).
These are the only *specific* advertisements identified by Brave that precede Consolver's hiring
AAPLO.[8]  None of these advertisements contains materially false or misleading information.

Exhibit 9 to Brave's Amended Complaint, a phone book advertisement for AAPLO,
provides in relevant part, "[o]ur firm has helped thousands of Kansas receive millions of dollars
in compensation for their injuries."  (Doc. 38-9).  Brave does not allege, nor can it allege, that
statement is false or misleading.  The ad then identifies six verdicts and/or settlements, ranging in
value from $9,000,000 to $496,000.  (*Id.*)  Finally, the ad contains the following disclaimer:
"Every [c]ase is different.  Similar results may not be obtained in your case.  Our past performance
is no guarantee of future results."  (*Id.*)  Exhibit 10, a screen-capture of the AAPLO website with
a date stamp of August 23, 2010, contains a list of 16 verdicts and/or settlements ranging in value
from $9,000,000 to $500,000 and containing the exact same disclaimer as in Exhibit 9.  (Doc. 38-
10).  Exhibit 11, a screen-capture from the TALG website advertising for AAPLO, contains a list
of 19 verdicts and/or settlements ranging in value from $9,000,000 to $500,000 and the exact same
disclaimer as in Exhibits 9 and 10.  (Doc. 38-11).  The cumulative value of the settlements and
verdicts reported in Exhibit 11 is $28,806,500.

Of the 19+ verdicts and/or settlements identified in Exhibits 9-11 to Brave's Amended
Complaint, Brave identifies only four as allegedly false—the $9 million settlement, $4.1 million

---

[8]  Brave attempts to incorporate the universe of all of Defendants advertisements by
identifying advertisements from the fall of 2013 forward and then alleging, for example, "[f]rom
at least 2007 to at least 2016" all Defendants ran "virtually identical" advertisements.  (*Id.*, ¶ 90).
These broad, non-specific allegations concerning the timing of Defendants' ads—the "when"
element of a Rule 9(b) fraud complaint—is no different than the allegations in Brave's initial
complaint in which it alleged Defendants "ran false and misleading advertisements in various
phone books from 20017 to 2015."  (Doc. 37, at 15).  "These allegations are also lacking in
specificity, as they do not offer any details regarding . . . when the false statements were
*specifically* made."  (*Id.*) (emphasis added).

verdict, $2.4 million verdict, and $1.1 million verdict.  (Doc. 38, ¶¶ 81-158).  Yet from the face of Brave's Amended Complaint, the Court can conclude none of these four reported verdicts and/or settlements are false in any significant respect.  *See General Steel Domestic Sales, LLC v. Chumley*, 627 Fed.Appx. 682, 685 (10th Cir. 2015) (noting many courts require plaintiffs to prove that a false or misleading advertisement is "likely to influence the purchasing decision" before permitting recovery based on it).  To the extent there were any errors or misstatements in the four verdicts and/or settlements reflected in Exhibits 9-11 about which Brave complains and on which Consolver could have relied, such errors were minor and unlikely to influence the purchasing decision.

Brave first complains any ad reporting a $9,000,000 settlement is "literally false" because "the person that actually reached the settlement had terminated Defendant Bradley A. Pistotnik, TALG, AAPLO, and Brian D. Pistotnik prior to any settlement being reached."  (Doc. 38, ¶¶ 81-84).  Assuming, as the Court must, Brave's allegations regarding the circumstances surrounding the $9 million settlement are true, the Court must nevertheless conclude there is nothing false about any Defendant representing a client settlement of $9,000,000.  Indeed, Brave concedes in its pleading, "Defendants . . . asserted an attorneys' lien against the former client and that lien was paid after the client reached the $9,000,000 settlement with new counsel."  (Doc. 38, ¶ 83).  Had Brad (or any of the other defendants) not participated in the case, and thus contributed to the settlement being reached, there would be no lien recovery.  *See*, *e.g.*, *Consolver I*, 395 P.3d at 412-413 (holding that because Brad did 90% of the work to arrive at a $300,000 offer, AAPLO was entitled to 90% of the fee).  Brave can point to no authority suggesting it is improper, fraudulent, or misleading for an attorney to advertise a result in which he contributed to the ultimate resolution.  Thus, even if Brave's allegations were true, which they are not, AAPLO did not, based solely on

Brave's allegations, misrepresent any facts in Exhibits 9-11 with respect to the $9,000,000 settlement.

Brave alleges the $4.1 million verdict refers to *Lake v. Res-Care, Kansas, et al.*, No. 98-1019-JTR (D. Kan.). (Doc. 38, ¶ 94). Assuming Brave is correct, nothing contained in Exhibits 9-11 regarding that $4.1 million verdict is false or misleading. Specifically, in Exhibits 9-11, the $4.1 million amount is advertised as "Nursing home negligence and malpractice (verdict)." (*See*, *e.g.*, Doc. 38-11). Attached as **Exhibit A** is the verdict form from that case, which the Court may take judicial notice of. *Van Woudenberg*, 211 F.3d at 568. The verdict entered by the jury included $1,510,000 in non-economic and economic losses and a finding that punitive damages should be awarded in the amount of $2,500,000 for a total award of $4,010,000. Assuming the $4.1 million advertised in Exhibits 9-11 refers to *Lake*, the advertisements are materially accurate save and except a misplaced "1", but it is unlikely, indeed implausible, that Brave's clients, or anyone for that matter, would find a $90,000 difference in over $28 million in advertised verdicts and settlements misleading. That the amount ultimately recovered by the plaintiff in the *Lake* case may have been less does not render any of the ads in Exhibits 9-11 false or misleading.

Indeed, even *The Wichita Eagle* reported the verdict as a $4 million verdict. *See* Ron Sylvester, *Malpractice Verdict: $4 Million – A Goodland Center for the Developmentally Disabled Loses a Lawsuit Prompted by a Denver Woman's Death*, *The Wichita Eagle*, September 5, 2001 (available on Westlaw at 2001 WLNR 1016159). In that article, *The Wichita Eagle* reported as follows:

> The family of a developmentally disabled woman who died in a western Kansas rehabilitation center won one of the state's biggest malpractice awards Tuesday: $4 million. The verdict included $2.5 million in punitive damages against Golden West Skill Center of Goodland and its parent company, Res-Care Kansas, Inc. It was the largest jury award in Kansas for medical malpractice in three years,

> culminating an eight-week trial before U.S. Magistrate Judge John Reid . . . .

*Id.*

Brave believes the $2.4 million verdict reported in Exhibits 9-11 references the verdict in *Vance v. Midwest Coast Transport, Inc., et al.*, No. 01-1422-MLB (D. Kan.).  (Doc. 38, ¶ 104).  Brave alleges any advertisement of a $2.4 million verdict is "literally false" because the plaintiff recovered significantly less.  (*Id.*, ¶ 106-107).  Notably, however, Exhibits 9-11—the only *specific* advertisements identified by Brave upon which Consolver could possibly have relied—**state nothing about recovery**.  For example, every reference in Exhibits 9-11 to $2.4 million provides "Tractor-trailer accident where car hit parked semi (verdict)."  (Doc. 38-10).  The verdict form from *Vance*, of which the Court may take judicial notice without converting this motion to a summary judgment motion, is attached as **Exhibit B**.  The form reflects the jury entered a verdict of $2,150,100.  Thus, to the extent the reported $2.4 million references the *Vance* verdict, the only error is a slight mistake in the amount entered by the jury.  Brave, however, makes no claim that Consolver, or any other client, was misled by that mistake, especially in the context of over $28 million in reported settlements and verdicts.  Indeed, to the extent the $2.4 million relates to the *Vance* verdict, Brave's own allegations reveal the error in the amount advertised was subsequently corrected to reflect a $2.1 million verdict.  (*See* Doc. 38, ¶¶ 148-153).

Finally, the only other amount reflected in Exhibits 9-11 on which Consolver could have relied and about which Brave complains is the $1.1 million amount reported as "Train and motor vehicle accident (verdict)."  (Doc. 38-10).  Brave claims that amount is related to *Honomichl, Jr. v. Burlington Northern Railroad Co.*, No. 95-CV-269 (Dist. Ct., Sedgwick County, Kansas).  (Doc. 38, ¶ 112).  Once again, the $1.1 million reflected in Exhibits 9-11 is not reported as a recovery, but rather only as a verdict.  The verdict form from that case is attached as **Exhibit C** and

Defendants request the Court take judicial notice of the same.  *Pace v. Swerdlow*, 519 F.3d at 1072–73 (court may take judicial notice of state court records).  That form reflects the jury entered a verdict totaling $1,101,968.69.  Thus, assuming the $1.1 million verdict reflected in Exhibits 9-11 is the *Honomochl* verdict as alleged by Brave, the advertisements were 100% accurate.

Brave devotes considerable space in its voluminous Amended Complaint to attacking a disclaimer used by one or more Defendant indicating "gross recovery before fees and expenses" and arguing there was no such *recovery*, gross or net, thus rendering ads using that disclaimer "literally false."  (*See*, *e.g.*, Doc. 38, ¶¶ 91, 98).  Every *specific* advertisement identified by Brave containing the "gross recovery" disclaimer, however, is alleged to have run on or after the fall of 2013.  (*See*, *e.g.*, Doc. 38, ¶ 87, 91, 129).  Clearly Ms. Consolver, who hired AAPLO in 2011, could not have relied on those ads in selecting AAPLO to represent her.  In any event, Brave does not allege any of its clients were misled by the "gross recovery" disclaimer.

Rather, the crux of Brave's Lanham Act claim relating to Consolver, the Hernandezes, and Eby is that "[b]ecause the Defendants lacked sufficient 'past successes' to use in their advertisements, they deliberately elected to advertise false and misleading results for past clients in order to gain a competitive edge in the marketplace[,]" and misled the public to believe "Bradley A. Pistotnik[] was a highly capable attorney who had actually received the verdicts and settlements advertised . . . ."  (Doc. 38, ¶ 176, 225).  The above and foregoing verdict forms demonstrate the falsity of Brave's allegations on the face of the Amended Complaint—Brad, in fact, actually secured the advertised verdicts and settlements.  With respect to Ms. Consolver particularly, Brave has not specified, nor can it specify, any *specific* false advertisement that caused Consolver to hire AAPLO as opposed to Brave.  Its Lanham Act claim with respect to injuries relating to representation of Ms. Consolver should, therefore, be dismissed, with prejudice.

## 2.   Brave fails to State a Claim against Brad Pistotnik or TALG for Violation of the Lanham Act Relating to Ernesto Hernandez and/or Yudi Hernandez

### a.   *Brave Suffered No Injury Caused by Brad Pistotnik or TALG*

To proceed with his Lanham Act claim relating to Ernesto and/or Yudi Hernandez (collectively the "Hernandezes"), Brave must "assert an injury to a commercial interest in reputation or sales." (Doc. 37, 11).  With respect to the Hernandezes, Brave alleges it has been injured in the following manner: (1) it "has been embroiled in litigation and forced to deal with the abandoned lien issue for years[;]" (2) it "has sustained injury to its reputation as well as been forced to spend considerable time and expense defending frivolous litigation[;]" (3) "the allegations that Brave Law Firm, LLC and its employees acted 'illegally, unethically[,] and immorally" have been disseminated far and wide and damaged its reputation both within the Kansas legal community and [with] potential clients."[9]  (Doc. 38, ¶¶ 220-222).  Brave alleges all of the aforementioned damages were caused by "AAPLO, *TALG*, Brian D. Pistotnik[,] and *Bradley A. Pistotnik*."  (Emphasis added).  None of Brave's alleged damages, however, were or could possibly have been proximately caused by Brad or TALG.

According to Brave's allegations, AAPLO—not Brad and not TALG—asserted an attorney's lien against any recovery by Ms. Hernandez.  (Doc. 38, ¶ 210).  The only litigation involving Brad and the Hernandezes is *Hernandez v. Pistotnik*, No. 2016-CV-285 (Dist. Ct., Sedgwick County, Kansas).  (Doc. 38, ¶ 216).  In that case, Brave, on behalf of Yudi Hernandez, asserts claims of fraud and violations of the KCPA against Brad despite Brave's knowledge that: (1) Brad "was not Yudi's attorney[;]" (2) Brian "was handling the underlying case for Yudi[;]" (3)

---

[9] Notably, Brave asserts no claim against any defendant herein for defamation, libel, slander, or the like.  Brave likewise fails to allege who made the alleged statements in quotations, when they were made, to whom they were made, or how such alleged statements caused damage to its reputation.

Mirna Hernandez, who recommended hiring AAPLO on the advice of a family friend, Peggy Soule, "never met, spoke to or communicated with Brad in any way[;]" (4) "Yudi was not able to identify any Pistotnik advertisements that aggrieved her . . . [and] doesn't know of anything that Brad did to harm her[;]" (5) Yudi "wants nothing from Brad and believes she shouldn't be suing him personally[;]" and "Yudi . . . never met, spoke to or communicated with Brad in any way." (See Doc. 38-20, at 3-4).[10]   Quite simply, the Hernandezes hired AAPLO, not Brad, to represent Yudi, and all interested parties concede there was no attorney-client relationship between Brad and any of the Hernandezes.  (*Id.*; *see also* **Exhibit D**: *Hernandez v. Pistotnik*, No. 2016-CV-285 (Dist. Ct., Sedgwick County, Kansas); *Defendant Brad Pistotnik's Motion for Summary Judgment*, filed July 11, 2018, Exhibit 6, Personal Injury Agreement between Yudi Hernandez, by and through Ernesto Hernandez, and AAPLO).[11]   Thus, to the extent Brave has been "embroiled in litigation" with Brad, it was and is of Brave's own volition and cause.

Likewise, through its allegations in its Amended Complaint, Brave necessarily concedes, as it must, that any expenses incurred relating to "the abandoned lien issue" were not caused by Brad.  (*See* Doc. 38, at ¶ 210 ["*AAPLO* asserted an attorneys' lien" (emphasis added)]; ¶ 215

---

[10] Exhibits attached to a complaint are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss.  *Tal*, 453 F.3d at 1265.

[11] The Court may take judicial notice of the exhibits attached to Exhibit D, as documents filed in state court, without converting this motion into a motion for summary judgment.  *Pace*, 519 F.3d at 1072–73.  Moreover, because Brave's Amended Complaint references and relies upon the Hernandezes retention of AAPLO, the written agreement establishing that retention may be considered by the court without converting this motion into a motion for summary judgment.  *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir.2001), *rev'd on other grounds*, 537 U.S. 79 (2002) (quoting *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997)); *see also Prager v. LaFaver*, 180 F.3d 1185, 1188–89 (10th Cir.1999) (quoting *GFF Corp.*); *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1369 (11th Cir.1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, ... the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendants attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

["Bradley A. Pistotnik agreed to abandon any right, title[,] or interest to the Hernandez lien"]; ¶ 217 ["*Brian* . . . sued . . . Ernesto . . . alleging a plethora of wrongful conduct in failing to pay the AAPLO lien that all parties had abandoned" (emphasis added)]; ¶ 218 ["*Brian* . . . would later try to amend . . . to name Brave Law Firm, LLC as a Defendant" (emphasis added)]).  Thus, with respect to *Hernandez v. Pistotnik*, Brad is only involved because Brave, purportedly acting on behalf of his client who does not believe Brad has done anything to harm her and does not know why she sued Brad, voluntarily chose to pursue litigation against him.  Brave cannot manufacture a financial loss and then seek retribution from others who played no role in causing that loss.

Yet with respect to the Hernandezes, Brave, of its own accord and with no plausible connection to Brad or TALG, foolishly compounded its expenses.  After Ernesto Hernandez terminated AAPLO and hired Brave, Brave finalized a $150,000 settlement from the two responsible insurers: Electric ($100,000) and Farmers ($50,000)—the exact same policy limit offers secured by Brian on Yudi's behalf prior to AAPLO's termination.  *See*, *generally*, *Hernandez v. Electric Ins. Co.*, 659 Fed.Appx. 500 (10th Cir. 2016); *Hernandez v. Farmers Ins. Co., Inc.*, No. 116,203, 2017 WL 3321958 (Kan. App. August 4, 2017) (unpublished); *see also* **Exhibit D**: *Motion for Summary Judgment*, Exs. 7 & 8.  Specifically, and presumably to avoid AAPLO's and/or Brian's lien, Brave waited until after Yudi reached the age of majority and negotiated the settlement to provide full payment *to Ernesto* and $0 to Yudi, while preserving Yudi's right to seek a declaratory judgment that the insurers' policy limits applied separately to both Yudi and Ernesto.  *Hernandez v. Electric Ins. Co.*, 659 Fed.Appx. at 501; *Hernandez v. Farmers Ins. Co., Inc.*, 2017 WL 3321958, *1.  Brave lost both cases on summary judgment and those judgments were affirmed on appeal.  *Id*.  Any expenses relating to the litigation and appeals in the above-referenced cases against Electric and Farmers were solely the result of Brave's failed

litigation strategy and/or its deliberate steps to avoid Brian's lien and were not caused by Brad or TALG.

Brave has also lost no fees as it relates to the Hernandezes. To the contrary, Brave received its full 33.3% contingency fee from the $150,000 settlement. *See* **Exhibit D**: *Motion for Summary Judgment*, Ex. 12, Response to Request for Admissions, ¶¶ 9-12; Ex. 15, Brave Law Firm, LLC Settlement Statement. In other words, Brave recovered the exact same amount it would have recovered on a policy limits settlement as it would have received had the Hernandezes never engaged AAPLO in the first place.

To the extent Brave's litigation expenses related to *Hernandez v. Pistotnik* adequately state an injury in fact that is redressable under the Lanham Act, those expenses, as conceded through the allegations in Brave's Amended Complaint, were not proximately caused by Brad or TALG. Because it has not pled any injury proximately caused by Brad and/or TALG, Brave lacks Article III standing, does not fall within the Lanham Act's zone of interest, and fails the Lanham Act's proximate cause test with respect to alleged injuries Brave has suffered relating to representation of the Hernandezes. Brave's Lanham Act claim against Brad and TALG relating to its representation of the Hernandezes should, therefore, be dismissed, with prejudice, pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6).

> **b.**  ***Brave's Lanham Act Claim Relating to the Hernandezes is Barred by the Two-Year Statute of Limitations***

Yudi Hernandez was injured on June 15, 2013. (Doc. 38, ¶ 203). Her father, Ernesto, with the aid of her sister, Mirna, hired AAPLO to represent Yudi. (Doc. 38, ¶¶ 205-206). That representation commenced with Ernesto's execution of a Personal Injury Agreement on June 23, 2013, eight days following Yudi's accident. *See* **Exhibit D**: *Motion for Summary Judgment*, Ex.

<u>6</u>.  On November 6, 2013, after Brian secured policy-limit settlement offers from both Electric and Farmers, Ernesto terminated AAPLO and hired Brave.  *Id*. at <u>Exs. 7, 8 & 10</u>.

As indicated above, Brave knew or reasonably should have known of Defendants' alleged fraudulent conduct commencing in 2007.  Moreover, evidence of Brave's alleged injury caused by Defendants' alleged fraudulent conduct, all of which had to predate the Hernandezes hiring AAPLO in June 2013, was either known or reasonably should have been known to Brave when it commenced representing Yudi and Ernesto in November 2013 or soon thereafter.  By that time, Brave had "such notice as would permit him to discover the [alleged] injury with the use of due diligence."  *Austin*, 2006 WL 980739, at \*11.  Indeed, Brave's pleading demonstrates that it had actual, concrete knowledge of Defendants' alleged fraudulent advertisements through its filing of suit against Defendants in *Hernandez v. Pistotnik* wherein Brave asserted a KCPA claim relating to Defendants' alleged false advertisements.  (Doc. 38, ¶ 216).  As a result, based on arguments and authorities set forth herein (*supra* pp. 15-19), Brave's Lanham Act claim relating to its representation of the Hernandezes is time-barred and must be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

### c.  *Brave's Lanham Act Claim Relating to the Hernandezes Lacks the Specificity Required by Rule 9(b)*

With respect to its alleged injury relating to the Hernandezes, Brave alleges they hired AAPLO because they were "previously exposed to *the false advertisements* described herein." (Doc. 38, at ¶ 206) (emphasis added).  Brave further alleges, with respect to the Hernandezes, "but for the *false advertising scheme perpetuated by Defendants*[,] . . . the Hernandezes would not have hired any of them to begin with . . . ."  (*Id*., at ¶ 219) (emphasis added).

As the Court has previously held, allegations against "Defendants" in the collective "does not specifically allege 'who' ran these advertisements . . . ."  (Doc. 37, at 15).  With the above-

referenced allegations, it is impossible to discern whose advertisement and/or advertisement(s) allegedly deceived one or more of the Hernandezes, on what medium the specific advertisements on which any of the Hernandezes allegedly relied were communicated, what specific advertisement(s) is/are alleged to have deceived the Hernandezes, or when the allegedly false advertisement(s) was/were communicated to and received by any of the Hernandezes prior to hiring AAPLO as counsel.  For the same reasons set forth in the Court's original order dismissing Brave's Lanham Act claim pursuant to Rule 9(b) (Doc. 37, at 15), Brave's amended claim as it relates to Ms. Consolver must likewise be dismissed.

> **d.  Brave Specifies No False Ads on Which the Hernandezes Could Have Possibly Relied**

The Hernandezes hired AAPLO in June 2013.  In its Amended Complaint, Brave does not identify any *specific* advertisement(s) run by any Defendant prior to June 2013 other than those depicted in Exhibits 9-11 to Brave's Amended Complaint.  Thus, for the same reasons set forth above (*supra* pp. 19-25), Brave's Lanham Act claim with respect to injuries relating to representation of the Hernandezes should, therefore, be dismissed, with prejudice.

### 3.  Brave fails to State a Claim for Violation of the Lanham Act Relating to Bridget Eby

In its order granting Brave a second chance to adequately plead its claims, the Court provided Brave a road map and explained precisely the types of facts Brave must plead to state a claim for a Lanham Act violation.  Among the necessary elements of Brave's Lanham Act false advertising claim are: (1) that Brave suffered "an injury to commercial interest in . . . sales[;]" and (2) such injury was proximately caused by Defendants' conduct.  (Doc. 37, at 11-12).  Indeed, the Court summarized its holding as follows:  "Should Brave allege an appropriate injury, its claim appears to be a 'classic Lanham Act false-advertising claim' where the diversion of sales away from Brave and to Defendants is a direct injury."  *Id.* at 12.

"[A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing *directly* from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade *from the plaintiff*."  *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, --, 134 S.Ct. 1377, 1391 (2014) (emphasis added).  Proximate cause requires "some *direct relation* between the injury asserted and the injurious conduct alleged…."  *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (emphasis added).  Proximate cause requires that the "alleged harm ... is [not] 'too remote' from the defendant's unlawful conduct," and that the "harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Lexmark*, 134 S.Ct. at 1390.

Once again, the holding in *Ahmed v. Hosting.com*, 28 F.Supp.3d 82 (D. Mass. 2014) is instructive.  (*See* Doc. 16, at 10-11).

> Ahmed asserts *the legal conclusion of injury*, but states no facts establishing … a commercial injury caused by the alleged infringement.  "[I]n judging the adequacy of a plaintiff's allegations, 'bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, [and] outright vituperation' carry no weight." [Citation omitted].  *Without stating facts that sufficiently demonstrate a claim arising under section 1125(a)*, Ahmed does not properly establish standing.  A failure to establish standing also prohibits a claim for proximate causation, as Ahmed provides no means by which to assess whether such damage has occurred, and whether the defendants' actions are the proximate cause of the damage. Without pleading facts that assert his claims fall within the zone of interest and demonstrate proximate causation, Ahmed's claims fail to establish standing under the *Lexmark* test.

*Ahmed*, 28 F.Supp.3d at 91 (emphasis added).  To survive a motion to dismiss, "a plaintiff must offer sufficient factual allegations to 'raise a right to relief above the speculative level.'"  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for *more than a sheer possibility . . . .*"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  It

follows then that if the "complaint pleads facts that are 'merely consistent with' a defendant's liability it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* "'A claim has facial plausibility when the [pleaded] factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1178 (10th Cir.2012). "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming*, 656 F.3d at 1214.

Brave's allegations of injury pertaining to representation of Ms. Eby are riddled with speculation and equivocation that fails to rise to the level of plausibility demanded by Rule 8.  For example, with regard to the element that is the crux of a Lanham Act claim—injury to commercial sales caused by fraudulent advertisements—Brave alleges "[b]ut for the false advertising scheme carried out by the Defendants, Brave Law Firm, LLC *probably would have likely been* Ms. Eby's first counsel of choice to represent her."  (Doc. 38, at ¶ 234) (emphasis added).  But to present an actionable claim under the Lanham Act, Brave must allege and prove that Ms. Eby would, in fact, have hired Brave instead of BPL had she not been misled by alleged false advertisements.[12]  (*See,*

---

[12] Because of the sensitive and personal nature of the claims advanced for and against Ms. Eby in her state court litigation, all files and records in the case have been sealed.  As a result, Defendants are unable at this time to provide the Court with appropriate state court documents for purpose of taking judicial notice that would conclusively demonstrate the falsity of Brave's allegations with respect to its alleged injuries relating to Ms. Eby and Brave's actual knowledge of the same.  In the unlikely event Brave's claim of injury relating to Ms. Eby survives dismissal, Defendants Brad and BPL, who/which having been terminated by Ms. Eby no longer have access to the file, will seek an order from the state court permitting filing in this court, under appropriate seal, of pertinent records, testimony, and orders entered in that case.  Presently, Ms. Eby's case is on appeal to the Kansas Court of Appeals in the case styled *Eby v. Griggs*, No. 117,924 and was placed on the court's summary disposition calendar for July 18, 2018 without oral argument.  As of the date of this Motion, that appeal has not been decided.

*e.g.*, Doc. 37, at 17 ["Brave has not . . . alleged any facts from which the Court could conclude that a potential client would have hired Brave as opposed to any other personal injury attorney in Wichita, Kansas."]).

In addition to being impermissibly speculative, Brave's allegation regarding Ms. Eby's selection of counsel is demonstrably false.  On July 20, 2018, Brave, acting as counsel for Ms. Eby, filed suit against Brad Pistotnik, Tony Atterbury (an attorney at BPL who represented Ms. Eby), and BPL in Case No. 18-CV-1610 asserting claims for: (1) violations of the KCPA nearly identical to the allegations herein; (2) fraud also nearly identical to the allegations herein; (3) negligence; and, (4) breach of fiduciary duty.  *See* **EXHIBIT E**.[13]  Remarkably, and fatal to its Lanham Act claim relating to Ms. Eby, Brave alleges in a *verified* petition supported by Ms. Eby's sworn verification and declaration, that Ms. Eby began contacting other "attorneys" about her case on *February 3, 2017* and at a *March 17, 2017* hearing on BPL's Motion to Withdraw as counsel, Ms. Eby, appearing *pro se*, indicated she was working with a lawyer in Kansas City and one in Wichita.  *Id.*  Brave, however, alleges here that it was not contacted or retained *until after Ms. Eby's case was dismissed in May 2017*.  (See Doc. 38, ¶¶ 232-233).  It is no wonder Brave chose to equivocate:  Two separate pleadings filed by Brave—one in this case and the other, submitted with verification by Ms. Eby in state court—conclusively reveal Brave was not Ms. Eby's second choice, or third choice, or fourth choice.  As a result, Brave cannot establish a Lanham Act injury and its claim in relation to Ms. Eby must be dismissed.

---

[13] Exhibit E, the petition filed by Brave on Ms. Eby's behalf, contains numerous allegations taken directly from sealed records and testimony in Ms. Eby's underlying case.  Though Brave, likely in violation of the court order requiring the entire case to be sealed, did not file the petition under seal, Defendants will withhold providing this exhibit to the Court until such time as Defendants' motion to file the exhibit under seal, filed contemporaneously herewith, is decided.

Even if Brave had been Ms. Eby's second choice as counsel, Brave nevertheless fails to allege facts demonstrating injury. Brave generally alleges that had it been Ms. Eby's attorney from the start, Ms. Eby's case would not have been dismissed and Brave would have secured a judgment in the amount of $2,722,740, resulting in lost fee revenue of $907,580. (Doc. 38, at ¶¶ 235-237). Yet again, Brave's allegations are horribly speculative.

"Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, so that "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, a plaintiff must "frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* at 1247 (quoting *Twombly*, 550 U.S. at 556). Brave's factual allegations do not rise above the speculative level. Brave alleges no facts whatsoever from which the Court could conclude that it is plausible Brave would have prevailed on Ms. Eby's behalf, in any amount, and thus recovered a fee for its services. Recognizing no such facts exist, Brave simply asks the court to take it at its word: "Ms. Eby's case would not be one that was particularly difficult to win and, if properly handled, would have generated a substantial attorneys' fee upon successful resolution." (Doc. 38, at ¶ 235). That Brave may believe it could have secured a better result for Ms. Eby does not move his allegations beyond the realm of pure speculation—"Trust me, I'm a good attorney" simply does not qualify as a plausible allegation of proximate cause.

With regard to Brave's Lanham Act claim relating to its representation of Ms. Eby, Brave fails to allege any facts rendering it plausible that but for Defendants' alleged false advertisements, Ms. Eby would have hired Brave (as opposed to someone else) and would have recovered on her

34

claim.  As a result, Brave's claim relating to alleged injuries concerning Ms. Eby's representation must be dismissed, with prejudice.

### 4.  Brave Fails to Allege Any Injury in Fact Proximately Caused by Defendants For Which It Can Seek Redress In This Case

For the reasons set forth above, Brave's allegations of injury with respect to Consolver, the Hernandezes, and Eby fail for a multitude of reasons and may not proceed.  Thus, Brave is a plaintiff without an injury.  Perhaps in recognition of the futility of its alleged injuries concerning the above-referenced clients, Brave seeks to incorporate a universe of unknown injuries by alleging "[i]n addition to those three matters, it submitted [*sic*] that it is probable that other clients that hired the Defendants would have retained the Plaintiff instead but for the false advertising scheme and that resulted in further lost profits to the Plaintiff."  (Doc. 38, ¶ 245).  Such conclusory, speculative, wishful allegations are insufficient to survive dismissal.  This allegation fails to establish an actionable Lanham Act false advertising claim for the same reasons already set forth in the Court's order dismissing Brave's first complaint, the findings of which are adopted and incorporated herein by reference.  (Doc. 37, generally).

## IV.  BRAVE FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE AND/OR CONSPIRACY FOR WHICH RELIEF CAN BE GRANTED

### A.  The Court Lacks Supplemental Jurisdiction

Because Brave's Lanham Act claim fails, Brave's state-law tortious interference claim and civil conspiracy claim necessarily fails for lack of subject matter jurisdiction.  28 U.S.C. § 1367(c); *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1217 (10th Cir. 2014) ("court properly acted under § 1367(c) in declining further supplemental jurisdiction over the state law claims" after federal law claims were dismissed).

**B.**     **Brave's Tortious Interference Claim Fails as a Matter of Law**

Under Kansas law, the elements for tortious interference with a prospective business relationship are: (1) the existence of a business expectancy with the *probability* of future economic benefit to the plaintiff; (2) *knowledge of the expectancy* by the defendant; (3) *plaintiff was reasonably certain to have* realized the expectancy but for the conduct of the defendant; (4) intentional misconduct by defendant; and (5) the damages plaintiff suffered are a *direct and proximate cause* of defendant's misconduct. *Turner v. Halliburton Co.*, 240 Kan. 1, 12, 722 P.2d 1106, 1115 (1986). Once again, none of Brave's tortious interference allegations are sufficient to nudge the claim "'"across the line from conceivable to plausible."'" *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

As it did originally, Brave once again pleads its tortious interference claim in the general rather than the specific. For instance, Brave alleges "Plaintiff had a business expectancy with the probability of future economic benefit with individuals seeking representation in connection with a personal injury and Defendants were aware of this fact." (Doc. 38, ¶ 250). This bare recitation of the elements of the claim, however, is insufficient to survive dismissal. Indeed, **with respect to this exact same allegation** (compare Doc. 38, ¶ 250 with Doc. 1, ¶ 63), the Court held as follows:

> These allegations are nothing more than a formulaic recitation of the elements of the claim. Furthermore, Brave has failed to allege any facts establishing the elements of its claim. For example, nothing in the Complaint suggests that Brave had a business expectancy with a probable future economic benefit *from any person*.

(Doc. 38, at 17) (emphasis added). Once again, nothing in the Amended Complaint suggests that Brave had a business expectation with a *probable* future economic benefit *from any specific person*. Indeed, there is absolutely nothing in the Amended Complaint from which the Court could find it plausible that on the date AAPLO and/or BPL commenced representing Consolver, the

Hernandezes, and/or Eby: (1) Brave had a business expectancy with the probability of future economic benefit with respect to any of those individuals; (2) any Defendant was aware of such a probability with respect to any of those individuals; or (3) that Brave was reasonably certain to have realized the alleged business expectancy. Quite simply, Brave's tortious interference claim fails for the same reasons it failed originally and, once again, should be dismissed.

## C.     Brave Fails to State a Claim for Civil Conspiracy

For its civil conspiracy claim, Brave has simply added additional, confusing, and illogical allegations generally suggesting that because Brad was the face of AAPLO in advertisements, and because Brad, Brian, TALG, and BPL allegedly "agreed to disseminate the false and misleading advertisements in order to make profit and gain a competitive edge in the marketplace," all Defendants have engaged in an unlawful civil conspiracy. (*See* Doc. 38, ¶¶ 255-274). Brave's allegations do not and cannot elevate Brave's civil conspiracy claim from the realm of conceivable to plausible.

First, Brave, likely intentionally, fails to identify when the alleged civil conspiracy occurred. This is critical because of the varying relationship of the parties at various points in time.

### 1.     <u>Prior to Brad Leaving AAPLO</u>

For purposes of this motion, the Court must assume the following facts are true:

- AAPLO was in existence from March 16, 1992 to January 15, 2015. (Doc. 38, ¶¶ 4, 40).

- Prior to June 9, 2014, Brian and Brad each owned 50% of AAPLO and each was a director and served as corporate officers of the company. (*Id.*, ¶ 30).

- TALG was the marketing arm of AAPLO, which had a website to "generate new clientele for AAPLO." (*Id.*, ¶¶ 20, 22, 48).

- Brad is and has been the only shareholder and officer of TALG and TALG is Brad's alter ego. (*Id.*, at ¶¶ 23, 25).

37

Brave does not allege, nor could it allege, a meeting of the minds prior to June 2014 between Brian, Brad, TALG, and AAPLO in which an agreement was reached to carry out a false advertising scheme in violation of the Lanham Act for the purpose of diverting clientele away from Brave and to AAPLO.  Rather, as it did in its original complaint, Brave simply alleges the parties ratified and/or agreed to participate in Brad's alleged false advertising scheme.  (*See* Doc. 38, ¶¶ 255-274).  Thus, the Court should, as it did previously, dismiss Brave's civil conspiracy claim and again hold as follows:

> Brave only alleges that Defendant Brad Pistotnik carried out a false and misleading advertising campaign and that Defendants AAPLO and Brian Pistotnik authorized, ratified, and approved the false and misleading marketing efforts.  Mere participation in an allegedly unlawful course of action is not sufficient to satisfy the "meeting of the minds" element of a civil conspiracy claim.

(Doc. 37, at 18) (citing *Kincaid v. Dess*, 48 Kan. App. 2d 640, 289 P.3d 358, 369-70 (2013)) (finding no civil conspiracy where there was no evidence "that there was ever an agreement or meeting of the minds").

In addition, to the extent Brave's incoherent allegations assert a claim for a civil conspiracy between Brian, AAPLO, Brad, and TALG, such a claim is barred because, for the reasons set forth above, Brave's underlying Lanham Act claim relating to Consolver and the Hernandezes,[14] is untimely.  *See Meyer Land & Cattle Co. v. Lincoln Cnty. Conserv. Dist.*, 29 Kan.App.2d 746, Syl. ¶ 5, 31 P.3d 970, 973 (2001) ("Where the underlying tort is time barred by an applicable statute of limitations, the conspiracy itself is likewise barred.")

---

[14] Brave does not allege any damages proximately caused by Brian and/or AAPLO relating to BPL's representation of Eby.  (*See* Doc. 38, generally).

2.        **Subsequent to Brad Leaving AAPLO:**

To the extent Brave's civil conspiracy claim is premised on the alleged diversion of Ms.

Eby from Brave to BPL, that claim also fails.  With regard to post-2014 acts, the Court must accept

the following as true:

- Brad ceased working for AAPLO on June 9, 2014.  (Doc. 38, ¶ 122).  Brad formed BPL in June 2014.  (*Id.*, ¶¶ 28, 122).

- At all times since June 2014, Brad has been the sole shareholder and director of BPL.  (*Id.*, ¶ 28).

- When Brad opened BPL in 2014, Brad, BPL, and TALG began directing potential clients to BPL instead of AAPLO.  (*Id.*, ¶ 124).

- Brian ceased running allegedly false advertisements for himself and/or AAPLO and, in October 2015, allegedly began complaining about Brad's alleged practices.  (*Id.*, ¶ 242, Doc. 38-8).[15]

Any claim that Brad, TALG, and BPL conspired to violate the Lanham Act to divert clients

from Brave to BPL fails for multiple reasons.  First, to plead a valid civil conspiracy claim, Brave

must plead facts plausibly demonstrating damages proximately caused by the civil conspiracy.

*Stoldt v. City of Toronto*, 234 Kan. 957, 967,678 P.2d 153, 161 (1984) (setting forth the elements

of civil conspiracy).  As set forth above, Brave has not and cannot allege Brad, BPL, and/or TALG

proximately caused it any damages with respect to Brave's representation of Eby.  (*supra*, pp. 30-

35).

Additionally, according to Brave's allegations, TALG is Brad's alter ego and Brad is the

sole shareholder, director, and officer of both TALG and BPL.  A corporate officer is generally

incapable of conspiring with his corporation.  *See Holter v. Moore & Co.*, 702 F.2d 854, 855 (10th

Cir.1983).  Brave has pled no facts that would permit the court to depart from this general principle.

---

[15] Brave identifies no allegedly false advertisements run by or for Brian and/or AAPLO after Brad left AAPLO in June 2014.

Brad cannot, as a matter of law, conspire with himself.  Thus, Brave has not pled an actionable civil conspiracy claim relating to any acts of Brad, BPL, and TALG and its claim must be dismissed.

## CONCLUSION AND PRAYER FOR RELIEF

Brave fails to allege facts from which the Court can conclude it is plausible that Brave possesses Article III standing or standing under the Lanham Act.  Brave's Lanham Act allegations sound in fraud, yet remain incredibly deficient under Rule 9(b).  Brave is barred by the applicable statute of limitations from recovering for its alleged injuries relating to Consolver and the Hernandezes.  It likewise fails to plead any facts from which the Court could find Brad and/or BPL proximately caused damages to Brave relating to Brave's representation of the Hernandezes and/or Bridget Eby.  Brave has pled no facts from which the Court can conclude it is plausible on the face of the Complaint that Defendants tortiously interfered with Brave's alleged prospective business relationships and/or engaged in an actionable civil conspiracy.  Brave's Complaint remains grossly deficient for multiple reasons and should be dismissed pursuant to Rules 12(b)(1), 12(b)(6), and/or 9(b).

Rather than granting Brave a third chance to conform his pleading to applicable standards, the Court should dismiss the Amended Complaint with prejudice.

Submitted this 3rd day of August 2018.

s/ Richard A. Olmstead

Richard A. Olmstead        KS #19946
KUTAK ROCK LLP
Omni Center IV, Suite 110
111 South Whittier Street
Wichita, KS  67207-1045
(816) 960-0090 (Telephone)
(816) 960-0041 (Facsimile)
Richard.Olmstead@KutakRock.com (E-Mail)

Stephen E. Robison        KS #8665
Lyndon W. Vix              KS #12375
FLEESON, GOOING, COULSON & KITCH,
L.L.C.
1900 Epic Center, 301 N. Main
Wichita, Kansas 67202
(316) 267-7361 (Telephone)
srobison@fleeson.com (E-Mail)
lvix@fleeson.com (E-Mail)

ATTORNEYS FOR DEFENDANTS
TRUCK ACCIDENT LAWYERS GROUP,
INC.; BRAD PISTOTNIK LAW, P.A.; AND
BRADLEY A. PISTOTNIK

4849-9220-4142.1

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of August 2018, the above and foregoing Memorandum in Support was filed using the CM/ECF system which will send notice of electronic filing to the following counsel of record:

Steve Brave
Brave Law Firm, LLC
3500 N. Rock Rd., Bldg. 100
Wichita, KS 67226

*Plaintiff*

David M. Rapp
Hinkle Law Firm LLC
1617 N. Waterfront Parkway, Ste. 400
Wichita, KS 67206

*Receiver for Defendant, AAPLO*

Brian D. Pistotnik
2831 E. Central
Wichita, KS 67214

*Defendant, Pro se*

s/ Richard A. Olmstead
Richard A. Olmstead

4849-9220-4142.1