# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BRAVE LAW FIRM, LLC,

    *Plaintiff,*

  vs.

    Case No. 17-1156-EFM-JPO

TRUCK ACCIDENT LAWYERS GROUP,
INC.; BRAD PISTOTNIK LAW, P.A.; and
BRADLEY A. PISTOTNIK,

    *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Brave Law Firm, LLC ("Brave") brings this action asserting claims under the Lanham Act and Kansas state law based on allegations of false and deceptive advertising. Before the Court is Defendants Truck Accident Lawyers Group, Inc. ("TALG"), Brad Pistotnik Law, P.A. ("BPL"), and Bradley A. Pistotnik's Motion to Dismiss (Doc. 44). Defendants seek dismissal of this lawsuit under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim under which relief may be granted and Rule 12(b)(1) for lack of subject matter jurisdiction. For the reasons discussed below, the Court grants in part and denies in part Defendants' motion.

# I.    Factual and Procedural Background[1]

Brave is a law firm located in Wichita, Kansas, that offers legal services in the nature of personal injury work.  Defendant Brad Pistotnik ("Brad") is an attorney who offers competing legal services in the same geographic area.  Pistotnik previously practiced law with his brother, Brian Pistotnik ("Brian"), under the Kansas professional corporation titled "Affiliated Attorneys of Pistotnik Law Offices, P.A." ("AAPLO").

While Brad and Brian were practicing law together, Brad formed TALG to operate as a marketing company for AAPLO.  TALG operates its own website, which primarily advertises legal services.  Since its formation, Brad has been the only shareholder of TALG and has served as its president, secretary, and treasurer.

In 2014, Brad left AAPLO to open his own law firm, BPL. Brad is BPL's only shareholder and serves as its president.  Brad continues to operate TALG and its website, and when potential clients contact TALG, he sends them to BPL.  AAPLO dissolved in January 2015.

Brave generally alleges that from 2007 to at least 2017, Defendants created and disseminated false and misleading advertisements regarding the amount of money they obtained as settlements and jury verdicts for their clients.  These advertisements appeared in various media formats including television advertisements, print ads, phone book ads, website content, "pay-per-click" advertising, and direct mail brochures.  The television advertisements appeared on local affiliate television stations as well as cable stations.

---

[1] In accordance with the standards governing motions to dismiss under Fed. R. Civ. P. 12, all well-pleaded facts in the Amended Complaint are assumed to be true.  The Court views the facts and the evidence in the light most favorable to Plaintiff.

As one example, Brave points to an advertisement run by Brad, TALG, Brian, and AAPLO stating that they obtained a settlement of $9 million for a past client. Brave alleges, however, that neither Brad, Brian, TALG nor AAPLO actually obtained a $9 million recovery because they were fired by the client. Brave also alleges that Defendants have falsely advertised in print ads, phone book ads, website content, "pay per click" advertising gross recoveries of $4.1 million, $2.4 million, $2.1 million, $1.1 million, and $1.6 million, when Defendants did not, in fact, obtain these amounts as gross recoveries for their clients.

Brave filed this lawsuit on July 3, 2017, against AAPLO, TALG, BPL, Brad, and Brian. The Complaint asserted three claims: violation of the Lanham Act based on false and deceptive advertising, tortious interference with prospective business advantage, and civil conspiracy. Defendants moved to dismiss these claims, and the Court granted the motion concluding that Brave lacked standing under Article III, that Brave did not meet the statutory requirements under the Lanham Act to state a false advertising claim, and that Brave did not plead his Lanham Act claim with sufficient particularity. The Court declined to exercise supplemental jurisdiction over Brave's state law claims, but it also noted that these claims failed to state a claim under which relief may be granted. The Court granted Brave leave to amend its Complaint, and on July 9, 2018, Brave filed an Amended Complaint. The Amended Complaint asserts the same claims as the previous Complaint with the addition of more specific allegations regarding Defendants' allegedly false advertisements.

In its Amended Complaint, Brave alleges that by the time it incorporated in 2010, Brad, Brian, TALG, and AAPLO had inundated the market for personal injury attorneys with their false advertisements. Brave contends that this false advertising scheme was successful because it caused clients to believe that Defendants were lawyers with an established track record of

obtaining multi-million-dollar verdicts and settlements. Brave offers three specific examples of past clients who relied on this allegedly false advertising.

The first example involves Mahnaz Consolver. On February 24, 2011, Consolver suffered injuries in an automobile accident. Consolver and her family had previously seen AAPLO, Brad, and Brian's advertisements and hired AAPLO for legal representation in April 2011. During mediation, the mediator told her that her case had a value of $360,000, but the highest settlement offer AAPLO obtained was $225,000 in exchange for a full release to the tortfeasor. Consolver rejected that offer and terminated AAPLO as her legal counsel. Following termination, AAPLO, Brad, and Brian, filed an attorneys' lien against any recovery made by Consolver for fees and expenses in the amount of $106,771.20. Consolver then hired Brave, who pursued a different theory of recovery and obtained a settlement amount of $360,000. If AAPLO, Brad, and Brian had not filed the attorney's lien, Brave would have received an attorney's fee of approximately $120,000. But, because AAPLO, Brad, and Brian were paid $97,101.08 on their lien, this reduced the amount of Brave's fee.

The second example involves Yudi Hernandez, a minor, who suffered injuries resulting from an automobile accident on June 15, 2013. Hernandez was placed in medically induced coma because of her injuries, and while she was in the coma, her father and older sister began investigating possible lawyers to assist with her case. The Hernandezes hired AAPLO, Brad, and Brian as a result of being exposed to Defendants' advertisements, although Brad later claimed that he had no involvement in the case. Throughout the litigation, AAPLO, Brad, and Brian failed to timely act on settlement offers and failed to carry out instructions regarding settlement, and therefore were terminated as counsel. The Hernandezes then hired Brave. AAPLO asserted an attorneys' lien against any recovery made by Yudi Hernandez for fees and expenses totaling

$51,002.83. After the lien was asserted, AAPLO was dissolved and a receiver was appointed to wind down its affairs. In November 2015, Yudi Hernandez sued AAPLO, Brian, and Brad for fraudulent charges contained in the lien and for violations of the Kansas Consumer Protection Act ("KCPA"). In response, Brian filed a countersuit against Yudi's father, two insurance companies, and Brave's employee, Stephen Brave, for wrongful conduct in failing to pay the AAPLO lien. Brian later tried to amend his petition to name Brave as a defendant to the lawsuit, but that motion was denied. Brave alleges that but for the false advertising scheme, the Hernandezes would not have hired AAPLO, Brad, or Brian to begin with, and Brave would have been its first choice of counsel. Brave further alleges that because of the false advertising it has been involved in litigation regarding the attorney's lien issue for years and has sustained injury to its reputation as well as considerable expense defending that litigation.

The third example involves Bridget Eby, who hired BPL and Brad in May 2016 to represent her in a personal injury action. BPL and Brad, however, missed the expert witness deadline in her case rendering it worthless. Instead of communicating this mistake to Eby, Defendants advised her to drop the case. Eby refused, and over Eby's objections, Defendants entered into an agreement with defense counsel to dismiss the case. Eby's case was dismissed with prejudice in May 2017. After the dismissal, Eby hired Brave to either save her previous case or to sue Defendants for negligence, fraud, and violations of the KCPA. Brave alleges that but for Defendants' false advertising scheme, Brave likely would have been Eby's first counsel of choice to represent her. It further alleges it would have resolved her case for approximately $2.7 million and thus generated an attorney's fee of $907,580.

In response to Brave's Amended Complaint, BPL, TALG, and Brad have filed another motion to dismiss asserting that Brave's additional allegations in the Amended Complaint do not

salvage its previous defunct claims. While this motion was pending before the Court, Brave dismissed all claims against Brian and AAPLO. Therefore, in resolving the Motion to Dismiss, the Court will only address Brave's allegations as they relate to TALG, BPL, and Brad.

## II.  Legal Standard

### A.  12(b)(1) Standard of Review

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."[2] A standing challenge is an attack on the Court's subject matter jurisdiction and analyzed under Rule (12)(b)(1).[3] Rule 12(b)(1) motions take two forms: (1) a facial attack on the sufficiency of complaint's allegations as to the court's jurisdiction or (2) a factual attack on the facts upon which subject matter is based.[4] This case involves a facial attack, and therefore, the Court must view the factual allegations in the Complaint as true but viewed through the *Iqbal*/*Twombly* plausibility standard.[5] The burden of proof is on the party asserting the court has jurisdiction.[6]

---

[2] *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir.1994).

[3] *See Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1224 (10th Cir. 2012) ("Our court has repeatedly characterized standing as an element of subject matter jurisdiction.").

[4] *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).

[5] *Id*. at 1002.

[6] *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

**B.     12(b)(6) Standard of Review**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "[7]  "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[8]  The plausibility standard enunciated in *Twombly*, seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause action,' which the Court stated 'will not do.' "[9]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[10]  The Court need only accept as true a plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[11]

### III.     Analysis

**A.     Brave's Lanham Act Claim**

Brave asserts a false advertising claim under § 43(a) of the Lanham Act.  Section 43(a) of the Lanham Act states as follows:

> (1) Any person who . . . in connection with any . . . services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

---

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[8] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[9] *Robbins v. Oklahoma*, 519 F.3d 1242 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[10] *Iqbal*, 556 U.S. at 678.

[11] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

. . .

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's . . . services, or commercial activities,

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.[12]

Brave alleges that Defendants are liable under this statute because Defendants disseminated false advertisements concerning the amount of their clients' recovery to Brave's detriment. More specifically, Brave alleges that three of its clients—Consolver, Hernandez, and Eby—were deceived by Brave's allegedly fraudulent advertising and thus hired Defendants rather than Brave. Defendants assert numerous grounds as to why Brave's claim fails, including statute of limitations, failure to plead with sufficient particularity as required by Rule 9(b), failure to plead one of the essential elements of the claim, and lack of Article III standing. The Court will address Brave's Lanham Act claim as it relates to the three individual clients identified in the Amended Complaint and as it relates to Brave's general allegations of liability.

    *1.    Brave's Lanham Act Claim Related to Consolver*

Defendants argue that Brave's Lanham Act claim relating to Consolver fails because (1) it is barred by the statute of limitations; (2) it does not satisfy the pleading requirements set forth in Rule 9(b); and (3) Brave has not specified any false ads upon which Consolver could have relied. None of these arguments are persuasive.

    a.    Statute of Limitations

---

[12] 15 U.S.C. § 1125(a)(1)(A)-(B).

The Lanham Act does not contain a statute of limitations for false advertising claims. Therefore, the Court must use an analogous state limitations period.[13] Courts that have considered this issue have applied the statute of limitations applicable to claims for fraud.[14] The parties do not dispute that this limitations period is analogous, and therefore, the Court will apply Kansas' two-year statute of limitations for fraud.[15]

Under K.S.A. § 60-513(a)(3), the statute of limitations for fraud does not begin to run until the fraud has been discovered.[16] The statute further provides that an action for fraud does not accrue "until the act giving rise to the cause of action first causes substantial injury," or if the injury is not reasonably attainable for some time, then the limitations period begins when "the fact of injury becomes reasonably ascertainable to the injured party."[17] Kansas courts have explained that "[i]n an action for relief *on the ground of fraud*, the statute of limitations does not start to run until the plaintiff discovers the fraud, or until he learns such facts as would lead a reasonably prudent person to investigate."[18]

Brave filed this lawsuit on July 3, 2017. Brave alleges that Defendants' wrongful conduct was not reasonably ascertainable until November 2016, and thus the statute of limitations does not bar its claim. But, Defendants argue that Brave's own contentions as well as facts derived from

---

[13] *See Reed v. United Transp. Union*, 488 U.S. 319, 323-24 (1989) (citation omitted).

[14] *Strauss v. Angie's List, Inc.*, 2018 WL 5722561, at *7 (D. Kan. 2018) (citing *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191-92 (2d Cir. 1996)); *see also PBM Products, LLC v. Mead Johnson Nutrition Co.*, 678 F. Supp. 2d 390, 404 (E.D. Va. 2009).

[15] K.S.A. § 60-513(a)(3).

[16] *Id.*

[17] *Id.* § 60-513(b).

[18] *Robinson v. Shah*, 23 Kan. App. 2d 812, 936 P.2d 784, 794 (1997) (citation omitted).

two state court decisions discussing Brad's representation of Consolver bely these allegations.[19] Consolver hired Brave on June 28, 2012. Approximately three years later, on July 9, 2015, Brave filed a second suit on behalf of Consolver and a class of similarly situated individuals alleging violations of the KCPA relating to Brad's advertisements on behalf of AAPLO. The claims in that case were premised on the general proposition that "Consolver was gulled out of a fair opportunity to select a different lawyer." Defendants argue that based on the filing of the second Consolver lawsuit, the false advertising acts causing Brave's injury were known to Brave at some point before July 9, 2015, and thus, the statute of limitations bars Brave's claim.

Brave has produced, however, evidence in the public record showing that it did not assert its KCPA claim until July 30, 2015, when it filed an amended petition. The filing of the amended petition is well within two years of Brave filing the Complaint in this case. Thus, Defendants cannot rely on the filing of the second Consolver lawsuit as affirmative evidence that Brave knew or should have known of Defendants' false advertisements two years before filing this suit.

Defendants also argue that Brave's own allegations in the Amended Complaint show that Defendants' alleged fraud was reasonably ascertainable beginning in 2007 and that Brave's injury was reasonably ascertainable in 2012 when Consolver hired it. But, the Court must determine

---

[19] Defendants ask the Court to take judicial notice of two Kansas Supreme Court decisions involving Brad, AAPLO, and Consolver. The Court may, and will, take judicial notice of these state court documents. *Columbian Finan. Corp. v. Bowman*, 314 F. Supp. 3d 1113, 1118 (D. Kan. 2018) (citing *Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008)). But it will also follow the Tenth Circuit's holding:

> [F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. This allows the court to "take judicial notice of its own files and records, as well as facts which are a matter of public record." However, "the documents may only be considered to show their contents, not to prove the truth of matters asserted therein."

*Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (citations omitted).

whether the facts, as they are stated in the Amended Complaint, indicate whether a reasonably prudent person would have investigated Defendants' actions in 2007 or 2012, and there are no facts in the Amended Complaint demonstrating that such an investigation should have taken place.[20] Therefore, the Court cannot dismiss Brave's Lanham Act claim as its relates to Consolver on this basis.

### b. Specificity under Rule 9(b)

In its previous Order granting Defendants' motion to dismiss, the Court held that Brave must state its Lanham Act claim with particularity as required by Rule 9(b) because its claim sounded in fraud. This standard also applies to Brave's Lanham Act claim in his Amended Complaint.[21] Under Rule 9(b), a party "must state with particularity the circumstances constituting fraud or mistake."[22] "[A] party alleging fraud must describe the circumstances of the fraud, i.e., the time, place, and content of the false representation; the identity of the person making the representation; and the harm caused by the complainant's reliance on the false representation."[23]

---

[20] Defendants argue that Brave should have been aware of Defendants' false advertisements beginning in 2007 because counsel for Brave was an associate at AAPLO from 2007 to 2010. Defendants rely on publicly filed documents from two unrelated cases in support of this argument and ask the Court to take judicial notice of these files. Even if the Court does take judicial notice of these documents, Stephen Brave's past employment does not indicate that he was aware of Brad's past advertising practices. This issue is better suited for resolution in a motion for summary judgment, not a motion to dismiss.

[21] *Integrated Bus. Tech., LLC v. Netlink Sols.*, 2016 WL 4742306, at *4 (N.D. Okla. 2016) (quoting *Cocona, Inc. v. Singtex Indus. Co.*, 2014 WL 5072730, at *8 (D. Colo. 2014)).

[22] Fed. R. Civ. P. 9(b).

[23] *Paradigm Alliance, Inc. v. Celeritas Tech., LLC*, 659 F. Supp. 2d 1167, 1183 (D. Kan. 2009) (quoting *Zhu v. Countrywide Realty, Co., Inc.*, 165 F. Supp. 2d 1181, 1200 (D. Kan. 2001)).

Furthermore, with regard to the "who" element, a plaintiff "must set forth separately the acts complained of by each defendant to satisfy the particularity requirement."[24]

In its Amended Complaint, Brave identifies advertisements run by AAPLO, TALG, BPL, Brad, and Brian from 2007 to 2016 through various media formats. Brave alleges that the advertisements contain false or misleading information regarding the amount of settlement or verdict Defendants obtained for their clients. Specifically, Brave identifies (1) a print advertisement placed in the September 2007 AT&T phone book for the Wichita area that lists purported verdicts and settlements obtained by AAPLO attorneys; (2) a "Results" page that appeared on the Pistotniklaw.com website from at least 2010 until 2014 listing purported settlements and verdicts; and (3) a "Results" page that appeared on TALG's website from at least 2010 until 2016 listing purported settlements and verdicts. In addition, Brave alleges that Defendants falsely advertised (1) a $9 million settlement, (2) a $4.1 million verdict with $2.5 million in punitive damages, (3) a $2.4 million verdict, and a (4) a $1.1 million verdict from 2013-2014 in television advertisements, and generally from 2007 to 2016 in other media formats.

Defendants argue that Brave's Lanham Act claim does not meet the specificity required by Rule 9(b) as it relates to Consolver. The Court disagrees. The purpose of Rule 9(b) is "to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based."[25] Brave's Amended Complaint consists of 52 pages and 276 paragraphs. A typical complaint filed

---

[24] *Regal Ware, Inc. v. Vita Craft Corp.*, 653 F. Supp. 2d 1146, 1154 (D. Kan. 2006) (citation omitted); *see also Robbins*, 519 F.3d at 1250 (stating that using the collective term "Defendants" does not meet the standard set forth in *Twombly*).

[25] *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (internal quotation marks and citation omitted); *Wilson v. Landers McLarty Olathe KS, LLC*, 2018 WL 5617832, at *4 (D. Kan. 2018) (citation omitted).

with this Court is less than 20 pages. Brave alleges that Brad, Brian, TALG, AAPLO, and BPL caused the advertisements to be run, indicates when the advertisements were run, specifies the media format through which those advertisements were run, and provides specific examples of the advertisements. Brave also alleges the harm it sustained from these advertisements—a loss in attorney's fees.

Although Brave has not identified the specific advertisements Consolver viewed or when she viewed them, this does not invalidate Brave's claim. Brave has alleged that Brad, Brian, TALG, and AAPLO engaged in a false advertising scheme that exposed potential clients, such as Consolver, to numerous false advertisements over a period of time.[26] The requirements of Rule 9(b) are relaxed when the alleged fraudulent acts are numerous and occur over an extended time period.[27] Here, it would be unduly burdensome to require Defendant to specify every false advertisement that Consolver relied upon and when she saw that advertisement. Accordingly, Defendants' arguments as to the specificity of Brave's Lanham Act claim as it relates to Consolver fail.

        c.      Falsity of the Advertisements

Defendants next assert that Brave has not identified any specific false advertisements upon which Consolver could have relied. One of the elements Brave must allege and prove to prevail on its false advertising claim is that Defendants made false or misleading representations of fact

---

[26] Brave has also alleged that BPL engaged in this false advertising scheme after its formation in 2014. BPL's conduct is not relevant to Brave's Lanham Act claim relating to Consolver.

[27] *Swimwear Sol., Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022, 1047 (D. Kan. 2018) (citing *United Air Lines, Inc. v. Gregory*, 716 F. Supp. 2d 79, 86 D. Mass. 2010); *Highland Rests., Inc. v. Judy Foods, Inc*., 1990 WL 92484, at *3 (D. Kan. 1990)).

in connection with the promotion of its goods or services.[28]  Exhibit 10 to the Amended Complaint is a screen capture of AAPLO's website with a date stamp of August 23, 2010.  It states:  "Partial listing of Verdicts and Settlements of Bradley A. Pistotnik and Brian D. Pistotnik:" and then lists 20 verdicts or settlements ranging in value from $9 million to $500,000.  It also contains a disclaimer stating:  "Every [c]ase is different.  Similar results may not be obtained in your case.  Our past performance is no guarantee of future results."  Exhibit 11 is a screen capture of AAPLO's website, stating in part:  "Here's a partial listing of verdicts and settlements of Bradley A. Pistotnik." and listing 19 verdicts and settlements.  It also contains the same disclaimer as Exhibit 10.  In its Amended Complaint, Brave alleges that four of the settlements and verdicts listed on these webpages are false—the $9 million settlement, the $4.1 million verdict, the $2.4 million verdict, and the $1.1 million verdict.

According to Brave, any advertisements reporting the $9 million settlement are "literally false" because "the person that actually reached the settlement had terminated Bradley A. Pistotnik, AAPLO, and Brian D. Pistotnik prior to any settlement being reached."  Defendants dispute this allegation, arguing that there is nothing false about representing a client settlement of $9 million because Defendants were able to assert an attorney's lien against the former client when settlement was eventually reached.  According to Defendants, it is not improper or misleading for an attorney to advertise a result in which he contributed to the ultimate resolution.

The Court is not persuaded by Defendants' argument.  The language in Exhibit 10 and Exhibit 11 does not identify Brad as someone who *helped* to obtain the $9 million settlement.  It

---

[28] *See World Wide Ass'n of Specialty Programs v. Pure, Inc*., 450 F.3d 1132, 1140 (10th Cir. 2006) (quoting *Sally Beauty Co., Inc. v. Beautyco, Inc*., 304 F.3d 964, 980 (10th Cir. 2002)).

states that he did obtain that settlement amount, which according to allegations of the Amended Complaint is false. Brave alleges that it was the client's new counsel who obtained that amount. Therefore, Brave's Lanham Act claim as it relates to Consolver cannot be dismissed on this ground.

### 2. *Brave's Lanham Act Claim Related to the Hernandezes*

To state a false advertising claim under the Lanham Act, Brave must meet the two-part test set forth by the Supreme Court in *Lexmark International, Inc. v. Static Control Components, Inc.*[29] The first test is the "zone of interests" test, which is used to determine whether a particular plaintiff falls within the class of plaintiff the statute intended to protect.[30] The second test is a proximate cause requirement, which prevents a plaintiff from recovering from a harm that is too remote form the defendant's unlawful conduct.[31]

To satisfy the zone of interests test, the plaintiff must allege "an injury to a commercial interest in reputation or sales."[32] Here, Brave alleges injury with respect to the Hernandezes because (1) it "has been embroiled in litigation and forced to deal with the abandoned lien issue for years"; (2) it "has sustained injury to its reputation as well as been forced to spend considerable time and expense defending frivolous litigation"; (3) "the allegations that Brave Law Firm, LLC and its employees acted 'illegally, unethically[,] and immorally' have been disseminated far and

---

[29] 572 U.S. 118 (2014). The two-part test set forth in Lexmark also applies to Brave's Lanham Act claim as it relates to Consolver. But, Defendants' motion does not address whether Brave's allegations regarding Consolver meet this two-part test.

[30] *Id.* at 132.

[31] *Id.* at 132-33.

[32] *Id.* at 132.

wide and damaged its reputation both within the Kansas legal community and [with] potential clients." Brave alleges that these damages were caused by AAPLO, TALG, Brian, and Brad.

Defendants do not argue that Brave has failed to meet the zone of interests test. Instead, they argue that Brave failed to allege an injury that was proximately caused by Brad or TALG. "[A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff."[33] Proximate cause requires that the "alleged harm . . . is [not] 'too remote' from the defendant's unlawful conduct," and that the "harm alleged has a sufficiently close connection to the conduct the statute prohibits."[34]

Here, Brave's allegations of injury are simply too remote from Defendants' allegedly false advertising for it to state a claim under the Lanham Act. AAPLO may have asserted an attorney's lien against any recoveries obtained by Yudi Hernandez in her personal injury case, but Brave has not alleged a loss of attorney's fees resulting from this lien. Instead, Brave describes its injuries as being "embroiled in litigation," a loss in reputation, and incurring "expenses defending the frivolous litigation." These injuries do not stem from Brave's representation of Yudi Hernandez.[35] Rather, they stem from the countersuit Brian filed against Ernesto Hernandez, two insurance companies, and Stephen Brave. Indeed, it was Brian who sought leave to amend this lawsuit and

---

[33] *Id*. at 133.

[34] *Id*.

[35] Attached to Brave's Amended Complaint is an Order dated April 4, 2017, from the Eighteenth Judicial District Court Sedgwick County, Kansas, showing that Brave represented Yudi in her claims against Brian, Brad, and AAPLO for fraudulent charges in the lien against her and violations of the KCPA.

name Brave as a defendant.  Perhaps if Brian and AAPLO were still defendants in the current suit, these damages would be proximately connected to the false advertising allegations.  But, neither Brad nor TALG were named defendants in Brian's countersuit.  Accordingly, the injuries sustained by Brave were not proximately caused by Brad, TALG's, or BPL's allegedly unlawful conduct, and the Court must dismiss Brave's Lanham Act claim with regard to Yudi and Ernesto Hernandez.

        *3.*       *Brave's Lanham Act claim related to Bridget Eby*

Defendants argue that Brave's Lanham Act claim related to Bridget Eby is too speculative to rise to the level of plausibility required by Rule 8.  First, Defendants take issue with Brave's assertion that "[b]ut for the false advertising scheme carried out by the Defendants, Brave Law Firm, LLC *probably would have likely been* Ms. Eby's first counsel of choice to represent her." According to Defendants, Brave is required to allege that Eby would, in fact, have hired Brave instead of BPL if she was not misled by the allegedly false advertisements.  But, Defendants point to no requirement that Brave's allegations must be as definitive as Defendants suggest.  In *Lexmark*, the Supreme Court found that allegations stating that "Lexmark's misrepresentations had 'proximately caused and were likely to cause injury" to Static Control Components by diverting sales was sufficient.[36]  And, the Amended Complaint contains more definitive allegations than the paragraph Defendants base this argument upon.  In paragraph 237, Brave alleges that "[b]ut for Defendants' false advertisements, Plaintiff submits it would have been hired to handle Ms. Eby's case . . . ."

Second, Defendants argue that Brave's allegation regarding Eby's choice of counsel is false.  On July 20, 2018, Brave, acting as counsel for Eby, filed suit against Brad, BPL, and another

---

[36] *Lexmark*, 572 U.S. at 123.

attorney at BPL who represented Eby in her personal injury case. In the verified petition, Eby alleges that on February 3, 2017, she started calling other lawyers to try and take over her case. Eby also alleges in that petition that during a hearing on March 17, 2017, Eby stated that she was working with another lawyer in Kansas City and one in Wichita. Brave, however, alleges in the Amended Complaint that Eby sought new counsel and retained Brave in May 2017 after her personal injury case was dismissed. Defendants therefore argue that these pleadings conclusively show that Brave was not Eby's second, third, or fourth choice for legal counsel and thus cannot establish a Lanham Act injury.

At this stage of the litigation, the Court must accept Plaintiff's allegations as true and construe all reasonable inferences from the facts in Brave's favor.[37] Brave has alleged that but for Defendants' false advertisements Eby would have hired Brave as her counsel. The allegations Defendants point to in the Amended Complaint do not state that Eby first contacted Brave in May after her personal injury case was dismissed. They only state that she sought new counsel and ultimately retained Brave after her personal injury suit was dismissed. Based on this, the Court cannot conclusively state that Brave was not Eby's second choice for legal counsel. As Brave asserts in its response brief, it is not unusual for clients to speak with multiple attorneys to determine who should take over its case. Defendants may have a colorable argument as to whether Eby would have hired Brave had she not seen Defendants' advertisements, but this argument is better suited for a summary judgment determination.

---

[37] *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016) (citing *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012)).

Finally, Defendants assert that Brave has failed to allege any facts demonstrating an injury. Brave alleges that had it been Eby's attorney from the beginning, Eby's case would not have been dismissed and Brave would have secured a judgment in the amount of $2,722,740 resulting in lost fee revenue of $907,580. Defendants assert that this injury is not plausible because the Amended Complaint is devoid of any facts from which the Court could conclude Brave would have prevailed on Eby's behalf. But, Brave has alleged that "Ms. Eby's case would not be one that was particularly difficult to win and, if properly handled, would have generated a substantial attorneys' fee upon successful resolution." This is sufficient to state a claim under the Lanham Act. Accordingly, the Court concludes that Brave has sufficiently stated a claim for false advertising under the Lanham Act relating to Eby.[38]

### 4. Article III Standing

To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[39] The plaintiff bears the burden of showing Article III standing exists.[40]

---

[38] Defendants do not argue that Brave's claim fails for lack of specificity under Rule 9(b) as it relates to Eby. However, Defendants appear to generally argue in another section of their motion that Brave's Lanham Act claim as a whole does not meet the specificity requirement. To the extent this argument applies to the allegations regarding Eby, the Court rejects Defendants' argument. As noted above, the Amended Complaint identifies which Defendants produced the false advertisements, specifies the type of media on which the advertisements appeared, and states when the advertisement appeared. Brave has also identified the harm it suffered as a result of the advertisements. At this point, Defendants have sufficient information to prepare a meaningful response to Brave's claim. *See Thompson v. Jiffy Lube Intern, Inc.*, 505 F. Supp. 2d 907, 932 (D. Kan. 2007) (stating that one of the purposes of Rule 9(b) is to enable defendants to prepare meaningful responses) (citation omitted).

[39] *Spokeo, Inc. v. Robins*, -- U.S. --, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

[40] *Id*. (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

Defendants briefly assert that Brave does not have standing to assert its Lanham Act claim. But, Brave has certainly met its burden with regard to Consolver and Eby. As discussed above, Brave alleges a loss in attorney's fees as to each of these clients that is fairly traceable to Defendants' false advertisements. This loss in fees is redressable by a favorable decision in this case. The Court need not address whether Brave has standing as its claim relates to the Hernandezes because the Court has already dismissed this aspect of Brave's claim. Therefore, the Court concludes that Brave has Article III standing to assert its Lanham Act claim.

## B.    Brave's Tortious Interference Claim

Under Kansas law, the elements of a tortious interference with prospective business advantage claim are (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) the plaintiff was reasonably certain to have continued the relationship or realized the expectancy but for the conduct of the defendant; (4) intentional misconduct by the defendant; and (5) the damages the plaintiff suffered are a direct and proximate cause of the defendant's misconduct.[41]  The plaintiff also must prove malicious conduct by the defendant.[42]

Defendants argue that despite the additional allegations in the Amended Complaint, Brave still has not sufficiently pled the elements of this claim. The Court agrees. Defendants may have pled the existence of a business relationship or expectancy with Consolver, the Hernandezes, or Eby, but nothing in the Amended Complaint suggests that BPL, TALG, or Brad was aware of Brave's business expectancy when these clients initially hired BPL or Brad instead of Brave to

---

[41] *Turner v. Halliburton Co.*, 240 Kan. 1, 722 P.2d 1106, 1115 (1986).

[42] *Id.*

-20-

represent them in their personal injury suit. Accordingly, Brave's tortious interference claim does not state a claim upon which relief may be granted.

## C.    Brave's Civil Conspiracy Claim

To state a claim for civil conspiracy under Kansas law, a plaintiff must allege: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful acts; and (5) damages as the proximate result thereof."[43] Defendants argue that this claim should be dismissed because Brave's allegations "cannot elevate Brave's civil conspiracy claim from the realm of conceivable to plausible."

Defendants argue that Brave's civil conspiracy claim should be analyzed according to the time period before and the time period after Brad left AAPLO because of the changing nature of Defendants' relationships to Brian and AAPLO. For the time period before Brad left AAPLO, Defendants argue that Brave has failed to allege any facts showing the third requirement of a civil conspiracy—a meeting of the minds in the object or course of action. But, Brave alleges that Brian and Brad agreed to feature Brad prominently in the advertisements for marketing purposes, and as part of that decision, also agreed that the advertisements would use the false and fraudulent settlement and verdict figures. It also alleges that AAPLO, TALG, BPL, Brad, and Brian "agreed to disseminate the false and misleading advertisements in order to make a profit and gain a competitive edge in the marketplace." And, it alleges that "[w]hile the AAPLO was running the false and fraudulent advertising scheme, Defendant Brian Pistotnik and Defendant Brad Pistotnik agreed to permit Defendant Brad Pistotnik to create the false and fraudulent advertisements in

---

[43] *Stoldt v. City of Toronto*, 234 Kan. 957, 678 P.2d 153, 161 (1984) (quoting *Citizens State v. Gilmore*, 226 Kan. 662, 603 P.2d 605, 606 (1979)).

order to generate clients and, as a result, profits." These allegations meet the third requirement of a civil conspiracy claim. Furthermore, when read in conjunction with the other allegations of the Amended Complaint, Brave states a civil conspiracy claim for the time period before Brad left AAPLO.

Conversely, Brave does not state claim for civil conspiracy after Brad's departure from AAPLO. The Amended Complaint alleges the following: (1) Brad stopped working for AAPLO on June 9, 2014 and formed BPL in June 2014; (2) Brad has been the sole shareholder and director of BPL since June 2014; (3) when Brad opened BPL in 2014, Brad, BPL, and TALG began directing potential clients to BPL instead of AAPLO; and (4) Brian stopped running allegedly false advertisements for himself and or AAPLO and began complaining about Brad's practices in October 2015. Based on these allegations, there could only be a civil conspiracy between Brad, BPL, and TALG after Brad left AAPLO in June 2014. However, according to Brave's allegations, Brad is the sole shareholder, director, and officer of TALG and BPL. A corporate officer is generally incapable of conspiring with his corporation.[44] Brave has not pled any facts that would allow the Court to depart from this principle.[45] Therefore, Brave has not pled a civil conspiracy claim relating to the actions of Brad, BPL, and TALG.

## IV.    Conclusion

The Court grants in part and denies in part Defendants' Motion to Dismiss. The Court dismisses Brave's Lanham Act claim as it relates to the Hernandezes. Brave may proceed on its

---

[44] *Holter v. Moore & Co.*, 702 F.2d 854, 855 (10th Cir. 1983).

[45] According to some courts, an officer of a corporation can conspire with the corporation if the officer personally benefits from the conspiracy to restrain trade. *Id*. at 857 n.8. This only applies, however, "when the officer has an outside economic interest, such as ownership of a competing corporation, through which he will benefit from the restraint." *Id.*

Lanham Act claim as it relates to Consolver and Eby.  As to the Brave's state law claims, the Court dismisses Brave's tortious interference with prospective business advantage claim and a portion of Brave's civil conspiracy claim.  Brave may proceed with its civil conspiracy claim for the time period prior to Brad's departure from AAPLO.

**IT IS THEREFORE ORDERED** that Motion to Dismiss of Defendants TALG, BPL, and Brad Pistotnik (Doc. 44) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED**.

Dated this 10th day of May, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE