UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRAVE LAW FIRM, LLC,

          Plaintiff,

v.                                                        Case No. 17-1156-EFM

TRUCK ACCIDENT LAWYERS
GROUP, INC., et al.,

          Defendants.

**<u>ORDER</u>**

This case involves a bitter fight between two competing plaintiffs' personal-injury lawyers in Wichita. Plaintiff Brave Law Firm, LLC ("Brave"), owned and operated by Stephen L. Brave, sued defendants Truck Accident Lawyers Group, Inc. ("TALG"), Brad Pistotnik Law, P.A. ("BPL"), and attorney Bradley A. Pistotnik ("Pistotnik"), asserting claims under the Lanham Act and Kansas state law based on allegations of false and deceptive advertising. Specifically, Brave alleges defendants advertised achieving gross recoveries for past clients that never actually happened. Stephen L. Brave represents his law firm in this case; defendants are represented by independent counsel.

A dispute has arisen between the parties over whether Brave may discover documents related to a confidential settlement agreement defendants advertised as having obtained for a client. The parties have filed a joint motion (ECF No. 80) asking the court

1

to resolve the dispute, with Brave moving to compel production of the documents and defendants moving for a protective order allowing them to withhold the documents. For the reasons discussed below, Brave's motion to compel is granted in part and denied in part, and defendants' motion for a protective order allowing complete withholding is denied. The court does, however, enter a more limited protective order governing disclosure of the documents.

Background

Brave is a law firm located in Wichita, Kansas, that offers legal services in the nature of personal-injury work. Pistotnik is an attorney who offers competing legal services in the same geographic area. Pistotnik previously practiced law with his brother Brian until they parted ways in 2014 and Pistotnik opened the law firm BPL. TALG is the marketing and advertising arm of BPL and is wholly owned and operated by Pistotnik.

Brave alleges that from 2007 to at least 2017, defendants created and disseminated false and misleading advertisements regarding the amount of money Pistotnik obtained in settlements and jury verdicts for clients. At issue in the current dispute is an advertisement run by defendants stating Pistotnik obtained a settlement of $9 million for a past client.[1] Brave alleges in this lawsuit that Pistotnik did not actually obtained the $9 million recovery

---

[1] Defendants suggest the settlement was actually in the amount of $9.5 million, although they advertised it as only $9 million. For simplicity's sake, the court will refer to the settlement as involving $9 million.

2

because he was fired by the client before the settlement was reached (by new counsel).[2] Defendants answer that, in fact, Pistotnik and his co-counsel, David Hart, did obtain the settlement.[3]

On May 31, 2019, Brave served its first request for production of documents,[4] to which defendants responded with objections on July 1, 2019.[5] Brave now moves the court to compel defendants' full responses to seven of the requests. Defendants make a cross-motion for a protective order allowing responsive documents to be withheld. The court will address the requests in turn.

### The Settlement Agreement (Request Nos. 6 and 7)

Brave first seeks a complete copy of the release or other settlement document that defendants allegedly obtained. Defendants respond that they are ethically bound not to produce the document of their former client and that the agreement itself prohibits its disclosure. Defendants assert a protective order should issue because the settlement involved the confidential information of nonparties and Brave should not be permitted to invade the attorney-client relationship of Pistotnik, a competitor.

---

[2] ECF No. 38 (Amended Complaint) at ¶¶ 81-85.
[3] ECF No. 71 (Answer) at ¶¶81-85.
[4] *See* ECF No.73.
[5] *See* ECF No. 81-4.

No one seriously disputes that the settlement agreement exists, that the settlement amount was either $9 million or $9.5 million,[6] and that the settlement agreement contains a confidentiality and nondisclosure clause prohibiting disclosure of the terms of settlement.[7] The only fact in dispute is whether Pistotnik was significantly involved in obtaining the settlement. The settlement agreement could shed light on this question. If, for example, the agreement allocates proceeds to various attorneys or includes attorney signatures, such information would be relevant to the question at hand. Similarly, the settlement agreement almost surely identifies Pistotnik's former client who likely can provide information about Pistotnik's participation in negotiating the settlement and the conspiracy alleged in this case.

Relevant information is discoverable *unless* it is privileged, not proportional to the needs of the case, or the court enters a protective order under the standards of Fed. R. Civ. P. 26(c).[8] Defendants did not assert relevance, proportionality, or privilege objections in their responses to Request Nos. 6 and 7. Thus, the court finds the settlement agreement is discoverable unless the standards for a protective order are satisfied here.

---

[6] *See supra* note 1.

[7] *See* ECF No. 81-8 (opinion of Judge William S. Woolley in *Eby v. Pistotnik*, Case No. 2018 CV 1610, slip op. at 19 (Sedgwick County D.C. May 28, 2019)).

[8] Fed. R. Civ. P. 26(b)(1) ("Unless otherwise limited by court order, . . . Parties may obtain discovery regarding any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case . . . .").

Rule 26(c) provides that upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The court has broad discretion to decide when a protective order is appropriate and what degree of protection is required.[9] The party seeking a protective order has the burden to demonstrate good cause.[10] In determining whether good cause exists, "the initial inquiry is whether the moving party has shown that disclosure of the information will result in a 'clearly defined and serious injury.'"[11] The moving party must show "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[12]

Defendants' first argument for the entry of a protective order forbidding discovery of the settlement agreement is that the terms of the agreement itself require confidentiality and nondisclosure. Tellingly, defendants cite no Tenth Circuit or District of Kansas caselaw in support of their position. "The caselaw in this District is well settled that

---

[9] *See Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) ("The modification of a protective order, like its original entry, is left to the sound discretion of the district court."); *see also Univ. of Kan. Ctr. For Research, Inc. v. United States*, No. 08-2565, 2010 WL 571824, at *3 (D. Kan. Feb. 12, 2010) (citing *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007)) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

[10] *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003) (citing *Reed v. Bennett*, 193 F.R.D. 689, 691 (D. Kan. 2000)).

[11] *Reed*, 193 F.R.D. at 691 (citing *Zapata v. IBP, Inc.*, 160 F.R.D. 625, 627 (D. Kan. 1995) (internal quotations omitted)).

[12] *Univ. of Kan. Ctr. For Research*, 2010 WL 571824 at *3 (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

5

confidentiality does not act as a bar to discovery and is not grounds to withhold documents or information from discovery."[13] In addressing an argument that a party was contractually barred from disclosing a settlement agreement, this court in *Sonnino v. Univ. of Kan. Hosp. Auth.* ruled, "Although a settlement agreement contains a confidentiality provision, litigants cannot shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality, and cannot modify the Federal Rules of Civil Procedure by agreement."[14] To be sure, judges in this district do protect confidential settlement agreements of nonparties by entering protective orders prohibiting their *disclosure* outside of the litigation, but they refuse to accept confidentiality as a basis for completely *withholding* discovery.[15] Thus, the court rejects confidentiality as a basis to protect the settlement agreements from production to Brave. However, as mentioned above

---

[13] *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM, 2011 WL 4008009, at *3 (D. Kan. Sept. 9, 2011); *see also Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB, 2007 WL 1246216, at *4 (D. Kan. April 27, 2007) (where settlement agreements with nonparties were deemed relevant, their production was ordered).

[14] 220 F.R.D. 633, 642 (D. Kan. 2004).

[15] *See In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2017 WL 1106257, at *14 (D. Kan. March 24, 2017) (declining to follow *Snowden v. Connaught Labs., Inc.,* 136 F.R.D. 694, 699–700 (D. Kan. 1991), in which the court held defendants were not required to produce documents in violation of a confidentiality agreement with third party); *High Point,* 2011 WL 4008009, at *3 ("The Court is not aware of any case sustaining a confidentiality objection as a basis for withholding discovery. Generally, the entry of a protective order limiting the disclosure of confidential information is sufficient to address a party's confidentiality concerns."); *Heartland Surgical,* 2007 WL 1246216, at *4 (noting the general protective order in the case would ensure a "certain degree of confidentiality" over settlement agreements of nonparties).

and as set out further below, the court does address defendants' confidentiality concerns by enter a protective order limiting disclosure of documents.

Defendants next assert "the strong public policy in favor of settling claims will be impaired if confidential settlements cannot remain confidential."[16] They contend further that the open and frank communication between attorneys and clients will be impaired if the court finds the settlement agreement discoverable. Again, defendants cite no Tenth Circuit or District of Kansas law to support their argument. Our court has ruled, "production of *completed* settlement or separation agreements does not so impact public policy issues as to justify their nonproduction. . . ."[17] Defendants have not addressed this ruling. Moreover, the court again notes the attorney-client privilege is not at issue here, as defendants did not assert such privilege in their discovery responses or in the briefs to the instant motion. Finally, a protective order limiting disclosure of information in the settlement agreement outside this lawsuit should alleviate defendants' confidentiality concerns.

Third, defendants vaguely suggest the settling plaintiffs, Pistotnik's clients, could be subject to a breach-of-contract claim if defendants produce the settlement agreement. A similar argument was rejected in *Gifford v. Precision Pallet, Inc.*, in which the court found that *if* the settlement agreement did in fact have a provision that would penalize a

---

[16] ECF No. 81 at 16.

[17] *Heartland Surgical*, 2007 WL 1246216, at *6 (emphasis in original).

7

party for disclosing information in accordance with a validly obtained court order, such provision likely would be unenforceable.[18] The undersigned agrees with this reasoning and finds it highly unlikely the clients would be harmed if the settlement agreement is produced as a result of this order.[19]

Fourth, defendants assert Pistotnik will be "damaged" if he is forced to produce the settlement agreement because a false signal would be sent "to the public and potential clients that [he] is incapable of confidentially settling a personal injury lawsuit."[20] This general fear, unsupported by any specific information or facts, is insufficient to meet the "good cause" standard for the entry of a protective order.[21] Defendants' statement in a section heading that Pistotnik and his former client "will suffer serious injury,"[22] without elaboration of the unnamed injury, suffers from the same defect.[23] In any event, the court

---

[18] No. 07-2339-JTM, 2008 WL 4078787, at *4 (D. Kan. Aug. 28, 2008).

[19] Although a breach-of-contract claim would seem highly unlikely in the face of a court order of production, even if one were brought, in this case it would be the attorney, not the client, committing the alleged breach.

[20] ECF No. 81 at 16.

[21] *See Reed*, 193 F.R.D. at 691 (ruling that to establish good cause, the moving party must show "that disclosure of the information will result in a 'clearly defined and serious injury'" (internal citation omitted)); *In re Syngenta AG MIR 162 Corn Litig.*, 2017 WL 1106257, at *13 (holding a general assertion that disclosure to a direct competitor would cause the producing party "substantial economic harm" was insufficient to meet the "burden of showing that such disclosure would result in a clearly defined, serious injury").

[22] ECF No. 81 at 18.

[23] *See Univ. of Kan. Ctr. For Research*, 2010 WL 571824 at *3 (ruling the movant must show "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" (internal citation omitted)).

is unpersuaded that a protective order limiting use and disclosure of the settlement agreement to this lawsuit would not sufficiently protect Pistotnik and his former client from all injury. It's true that defendants have presented evidence indicating Brave admitted to disclosing Pistotnik's deposition transcript to persons outside the protective order entered in a related state case,[24] but the court has witnessed no misconduct in this federal case. Should Brave (or anyone else) violate an order of this court, rest assured the court will act swiftly and mercilessly in holding that party in contempt.

Finally, defendants ask the court to enter a protective order on the basis that Pistotnik would violate Rule 1.6 of the Kansas Rules of Professional Conduct ("KRPC") if he produced the settlement agreement.[25] KRPC 1.6 generally prohibits a lawyer from revealing "information relating to representation of a client." Significantly, however, the rule contains an exception that the lawyer "may reveal such information to the extent the lawyer reasonably believes it necessary . . . to comply with other law or a court order."[26] Thus, Pistotnik will be protected from ethical concerns by this order requiring disclosure.[27]

---

[24] ECF No, 81-12 (opinion of Judge William S. Woolley in *Hernandez v. Pistotnik*, Case No. 2016 CV 285, slip op. at 2 (Sedgwick County D.C. May 22, 2019)).

[25] The District of Kansas has adopted the Kansas Rules of Professional Conduct as "the applicable standards of professional conduct" for the members of the bar of this court. D. Kan. Rule 83.6.1.

[26] KRPC 1.6(b)(4). *See also* Comment 14 to KRPC 1.6 ("The lawyer must comply with valid final orders of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about the client.").

[27] *See BridgeBuilder Tax + Legal Servs., P.A. v. Torus Specialty Ins. Co.,* No. 16-2236-JWL, 2017 WL 914809, at *7 n.43 (D. Kan. March 8, 2017) (recognizing that court

9

In the end, the parties agree that whether Pistotnik played a significant role in obtaining the settlement which defendants advertised lies at the heart of this case. Fairness requires allowing Brave access to information critical to this issue, and Brave's motion to compel is granted in this regard. Defendants' confidentiality concerns can be addressed by a protective order, discussed below, limiting the use and disclosure of the settlement agreement for the purposes of prosecuting or defending this lawsuit. Defendants have not met their burden of demonstrating good cause for the entry of a protective order that would allow them to completely withhold the settlement agreement from discovery; their motion for protective order is denied in this regard.

<u>Documents Related to Settlement Funds Received (Request No. 8)</u>

Brave also requested documents "proving" defendants "received and/or deposited funds received in connection with the alleged $9,500,000 settlement."[28] The court finds this request relevant to the issue of how much involvement Pistotnik had in securing the settlement. The amount he was paid in connection with the settlement arguably could be an indicator of the level of work he provided. Defendants did not assert privilege objections. Rather, defendants withheld responsive documents on the same basis as the

---

order requiring disclosure of confidential communications by attorney would protect the attorney from the ethical concerns of KRPC 1.6); *see also In re Syngenta AG MIR 162 Corn Litig.*, 2017 WL 1106257, at *15 (rejecting argument that a subpoena to counsel should be quashed on the basis that the attorney would violate his ethical duty of confidentiality to the client if he complied with it).

[28] ECF No. 81-4 at 6.

10

settlement agreement: that the confidentiality provision of the settlement agreement and KRPC 1.6 prohibit disclosure, and the privacy rights of nonparties would be invaded.[29] The objections are overruled for the same reasons set out above regarding production of the settlement agreement. The interests of nonparties will be protected by the protective order limiting disclosure. Brave's motion to compel is granted as to Request No. 8.

Copy of Lien Asserted Against Client in the Case Settled (Request No. 9)

Request No. 9 seeks copies of any lien defendants asserted against the client in the case that was settled. Defendants responded that they would be ethically prohibited from producing such a lien but, in any event, "no such lien was ever filed."[30] The court cannot order produced something that does not exist. Brave's motion to compel therefore is denied as to this request. Of course, should Brave later obtain evidence to support his contention that defendants "are playing games" in their response and a lien does exist (i.e., was "asserted" in any way, even if not technically filed in some government office), Brave may seek sanctions at that time (which the court almost certainly would impose).

Pistotnik's Communications with the Disciplinary Administrator (Request Nos. 2 and 3)

---

[29] Defendants did not address this specific request in their response to Brave's motion to compel, nor did they seek a protective order with respect to this specific information (instead seeking protection for the overly broad category of "discovery concerning the details of, participants in, or circumstances surrounding the $9.5 million settlement"). ECF No. 81 at 14.

[30] ECF No. 81-4 at 6.

11
O:\ORDERS\17-1156-EFM-80.docx

In connection with Brave's contention that Pistotnik has falsely advertised the $9 million settlement, Brave filed an ethics complaint with the Kansas Office of Disciplinary Administration. Document Request Nos. 2 and 3 seek copies of all documents in defendants' possession that defendants received from or sent to any source regarding the ethics case. Defendants objected to providing any documents on the bases that the requests encompass documents subject to the attorney-client privilege and/or the work-product doctrine, and that the information sought was private and confidential and could not be disclosed under Kansas Supreme Court Rule 222. In his motion to compel, Brave does not challenge defendants' privilege assertions,[31] but states he is seeking non-privileged documents responsive to his requests. With respect to those documents, Brave asks the court to overrule defendants' Rule 222-based objection.

Rule 222 states:

(a) Confidentiality. All complaints, investigations, reports, correspondence, proceedings, and records of the disciplinary administrator and the Kansas Board for Discipline of Attorneys are private and confidential and must not be divulged in whole or in part except as provided in subsections (d), (e), and (f) below or by order of the Supreme Court.

(b) Complainant and Respondent. This rule does not prohibit . . . the respondent from . . . disclosing any documents or correspondence filed by, served on, or provided to that person.

---

[31] As relates to Request Nos. 2 and 3, the court notes, but will let pass for now, defendants' failure to provide a detailed privilege log mandated by Fed. R. Civ. P. 26(b)(5)(A) and this district's caselaw. *See New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 448 (D. Kan. 2009).

Brave argues Rule 222(a), by its express terms, applies only to the disciplinary administrator and the Kansas Board for Discipline of Attorneys, not to defendants. The court agrees. The exceptions listed in Rule 222(a)—those included in subsections (d), (e), and (f)—all discuss when "the disciplinary administrator may disclose" information, thus indicating subsection (a) applies only to the state agencies. Rule 222(b) applies on its face to Pistotnik as the "respondent" to the ethics complaint and permits him to disclose the information Brave seeks in discovery. Accordingly, the court finds the information is discoverable unless defendants have shown good cause for the entry of a protective order permitting Pistotnik to withhold the information.[32]

Defendants state Pistotnik does not voluntarily disclose the documents pursuant to Rule 222(b). But they don't really explain why the documents should be withheld under a protective order. Thus, defendants' motion for a protective order on Request Nos. 2 and 3 is denied.

<u>Communications with David Hart Regarding His Declaration (Request No. 4)</u>

Brave's final request was for documents "sent to, or received from, David Hart in connection with his Declaration attached to your Answer."[33] In the subject declaration,

---

[32] *See In re Rockhill Pain Specialists, P.A.*, 55 Kan. App. 2d 161, 179-82 (2017) (holding state statutes governing "confidential" documents submitted to physician peer-review committees and Kansas Board of Healing Arts did not create a discovery privilege but could be the subject of a protective order).

[33] ECF No. 81-4 at 3.

13
O:\ORDERS\17-1156-EFM-80.docx

Hart stated he was co-counsel with Pistotnik in the settling case, and that Pistotnik was "intimately involved with the case" and "performed a substantial portion of the work."[34] Defendants objected to Brave's document request on the basis of attorney-client privilege and the work-product doctrine, and stated they were withholding e-mails exchanged between Pistotnik, his counsel, and Hart relating to the declaration, as well as drafts of the declaration. Brave moves the court to overrule defendants' privilege objections and compel production of the documents. Brave asserts defendants did not produce a privilege log, that legal advice was not sought by a client such that the attorney-client privilege could apply, and in any event, any protection was waived when defendants placed Hart's knowledge at issue by submitting the declaration. The court agrees with Brave's positions.

Under federal common law, the essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived.[35] The party asserting the privilege bears the burden of establishing that the elements are met.[36]

---

[34] ECF No. 71-2.

[35] *In re Syngenta AG MIR 162 Corn Litig.*, 2017 WL 1106257, at *7.

[36] *Id.*

14

The work-product doctrine was first recognized in *Hickman v. Taylor*[37] and subsequently codified via Fed. R. Civ. P. 26(b)(3). It protects documents "prepared in anticipation of litigation or for trial by or for another party or its representative."[38] "The protection provided by the work-product doctrine is not absolute, and it may be waived."[39] "Similar to the attorney-client privilege, the party asserting work product privilege has the burden of showing the applicability of the doctrine."[40]

The court finds defendants have not satisfied their burden of showing that the attorney-client privilege or the work-product doctrine protects documents related to the Hart declaration. First, defendants do not address the fact that they did not produce the required privilege log, which could deem the privilege waived under this court's caselaw.[41] Even when presented a second chance to produce a privilege log in response to Brave's motion to compel, defendants presented no log to support their privilege assertions. Nor

---

[37] 329 U.S. 495, 499–500 (1947).

[38] Fed. R. Civ. P. 26(b)(3)(A).

[39] *In re Quest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006).

[40] *In re Grand Jury Proceedings*, 616 F.3d 1172, 1185 (10th Cir. 2010) (internal quotation and citation omitted).

[41] *See, e.g., In re Syngenta AG MIR 162 Corn Litig.*, 2017 WL 1106257, at *5; *Kannaday v. Ball*, 292 F.R.D. 640, 647 (D. Kan. 2013) ("It is well settled that if a party fails to make the required showing under Fed. R. Civ. P. 26(b)(5)(A) by not producing a privilege log or by producing an inadequate one, courts may deem the privilege waived."); *New Jersey v. Sprint Corp.*, 258 F.R.D. at 448 ("If a party fails to make the required showing, by not producing a privilege log or by providing an inadequate one, the court may deem the privilege waived.").

have defendants provided a reason why they failed to so do. Not even attempting to explain the absence of the required log in response to the motion to compel weighs in favor of deeming the privilege waived. In this situation, the court deems waived any privilege or work-product protection that may have applied.[42]

The court's analysis could end here, but the court continues for the benefit of the parties. The court would also overrule defendants' objections because defendants have made only "unsupported conclusory assertions" of privilege and protection that do not satisfy their burden of establishing work-product protection or the elements of the attorney-client privilege.[43] Specifically, defendants cite no support for their theory that because the communications between Pistotnik, his counsel, and Hart "were for the purpose of protecting [Pistotnik]'s and Hart's mutual client from and against Brave's repeated attempts to invade the attorney-client relationship . . . [they] are privileged communications and work product."[44] And even if the communications had been shown protected to some extent, defendants have not demonstrated the *entire* e-mail exchange is protected. For example, this court has held "general topics of attorney-client discussions" and ultimate "legal conclusions" of counsel are not protected.[45] Without a privilege log or other

---

[42] *See Kannaday*, 292 F.R.D. at 647-49 (holding defendant failed to meet its burden where it did not present a privilege log or explain why it failed to so do).

[43] *Id*. at 649.

[44] ECF No. 85 at 3.

[45] *Sprint Commc'ns Co., L.P., v. Comcast Cable Commc'ns, LLC,* Nos. 11-2684, 11-2685, 11-2686, 2014 WL 545544, at *6 (D. Kan. Feb. 11, 2014) (holding that counsel's ultimate legal

16
O:\ORDERS\17-1156-EFM-80.docx

explanation containing detail of what has been withheld, the court is unable to conclude defendants established the elements of the privilege or work-product protection.[46]

Finally, the court recognizes Brave may be correct in his assertion that any privilege which otherwise attached to the documents was waived when defendants placed Hart's knowledge at issue by submitting his declaration. But given both sides' failure to set forth or discuss the applicable legal standards, the court understandably will decline the opportunity to delve into the extensive analysis necessary to determine subject-matter or "at issue" waiver of the attorney-client privilege and work-product protection. It is enough to find defendants have not met their burden of showing attorney-client or work-product protection, and their objections to production of responsive documents are overruled.[47] Brave's motion to compel is granted as to Request No. 4.

## Contents of Protective Order

As discussed above, this court historically has protected the confidential information of nonparties produced in discovery by limiting the use and disclosure of the information

---

conclusion that defendants infringed patent was not the type of substantive communication protected by the attorney-client privilege).

[46] *See Kannaday*, 292 F.R.D. at 649-50 (overruling privilege and work-product objections where defendant "did not provide the court with sufficient information" to determine whether either applied).

[47] Defendants did not seek a protective order with respect to this discovery.

17

to the lawsuit in which it is produced.[48] Brave recognizes these past decisions but argues "unusual circumstances" in this case justify proceeding here without any protective order.[49] First, Brave asserts defendants have already publicly advertised the fact that a settlement occurred and "the terms of the settlement," such that "[t]he only information that is not [publicly] known about the alleged settlement is who the parties were, and who represented them."[50] Second, Brave states the lien filed by Pistotnik against the former client "would also be public information."[51] The court disagrees with Brave's characterization of the current circumstances.

First, the full "terms" of the settlement have not been publicly disclosed. The only information that has been disclosed is the amount of the settlement. Second, as discussed above, for now at least the court takes defendants at their word that no "lien" exists. Thus, the fact that liens may be publicly filed has no relevance here. Brave has given the court no cause to deviate from the well-reasoned past opinions of this court. Based on the concerns expressed by defendants (e.g., that the information implicates the rights of nonparties, attorney-client relationships, and ethics rules), the court finds good cause to

---

[48] See cases discussed in *supra* note 15, as well as cases discussed in ECF No. 85 at 3 n.9.

[49] ECF No. 84 at 1.

[50] *Id.* at 1-2.

[51] *Id.* at 2.

enter a protective order in this case that tracks the court's pre-approved form protective order. The protective order is attached to this order as Exhibit A.

IT IS THEREFORE ORDERED that Brave's motion to compel is granted in part and denied in part, and defendants' motion for a protective order allowing complete withholding is denied.

IT IS FURTHER ORDERED that defendants shall produce documents responsive to Brave's document Request Nos. 2-4[52] and 6-8 by **August 26, 2019**. These documents shall be governed by the protective order attached as Exhibit A to this order.

Dated August 8, 2019, at Kansas City, Kansas.

s/ James P. O'Hara<br>
James P. O'Hara<br>
U.S. Magistrate Judge

---

[52] This does not include documents responsive to Requests 2 and 3 withheld on the unchallenged bases of attorney-client privilege and the work-product doctrine.

19
O:\ORDERS\17-1156-EFM-80.docx