# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

BRAVE LAW FIRM, LLC,

    *Plaintiff,*

vs.

Case No. 17-1156-EFM-JPO

TRUCK ACCIDENT LAWYERS GROUP, INC.; BRAD PISTOTNIK LAW, P.A.; and BRADLEY A. PISTOTNIK,

    *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Brave Law Firm, LLC ("Brave") brings this action asserting claims under the Lanham Act and Kansas state law based on allegations of false and deceptive advertising. This matter comes before the Court on Defendants Truck Accident Lawyers Group, Inc., Brad Pistotnik Law, P.A., and Bradley Pistotnik's Motion to Enforce Settlement Agreement (Doc. 90) (collectively, Defendants will be referred to as "TALG"). Brave offered to dismiss this suit if TALG presented admissible, authenticated proof that a $9 million or $9.5 million settlement occurred as advertised. TALG contends that it has produced such evidence, but Brave disputes that it meets the conditions called for in the settlement offer. The Court held an evidentiary hearing on TALG's motion on February 4, 2020. For the reasons set forth below, the Court grants TALG's motion and enforces the settlement agreement.

## I. Factual and Procedural Background

The parties agree that the Report of Parties' Planning Conference sets forth Brave's settlement offer to TALG. The Report states: "Plaintiff has submitted a written, good-faith settlement proposal to the defendants. Specifically, the Plaintiff has agreed to dismiss this lawsuit upon receipt of authenticated, admissible proof that the $9,000,000 and/or $9,500,000 settlement advertised by all of the Defendants occurred as advertised."[1]

The settlement offer does not refer to a specific advertisement, but the parties referenced a television commercial and multiple print advertisements as those promoting a $9 million settlement.[2] The television commercial opens with Defendant Brad Pistotnik standing on top of an 18-wheeler stating, "Sometimes big truck wrecks can result in big case settlements." This scene features a disclaimer at the bottom stating, "The client results from stated verdicts or settlements are real amounts. The larger amounts result from catastrophic injury cases." Defendant Pistotnik then states, "These are just some of the big results that I've gotten for my clients," at which point various dollar amounts appear on the screen. The last dollar amount appearing on the screen is $9 million. The text at the bottom of the screen describes this amount as a "[s]emi accident resulting in quadriplegia."

---

[1] During the hearing, Brave argued that the actual settlement offer was set forth in its response brief to TALG's motion. According to Brave, the actual offer was that "this case would be dismissed in the event they [TALG] provided solid proof that they obtained a $9,000,000 or $9,500,000 settlement for a past client as advertised." The Court pointed out that this offer differed from the offer in the Report because it identified "a past client" as the object for whom the settlement was obtained. Regardless, the Court rejected Brave's argument that the settlement offer was set forth in its response brief as illogical. The settlement offer had to exist before TALG could file its Motion to Enforce the Settlement Agreement. After the Court pointed this out, Brave conceded that the Report accurately reflected the settlement between the parties.

[2] During the hearing, TALG referenced the advertisements attached as exhibits to the Amended Complaint. *See* Docs. 38-9, 38-10, 38-11, and 38-18. Brave identified four additional advertisements in its response brief. *See* Docs. 104-1, 104-2, 104-3, 104-4. The commercial identified by the parties was conventionally filed at Doc. 82.

The print advertisements are taken, in part, from the yellow pages of a phonebook and TALG's and Brad Pistotnik Law's websites. There is also a circular advertising Brad Pistotnik Law touting the firm's high verdicts and settlements. The pertinent language from these advertisements, with some minor variations, state: "Here's a PARTIAL listing of verdicts and settlements . . . $9,000,000 – Tractor-trailer accident at night (settlement)."[3]

On August 26, 2019, TALG acknowledged its acceptance of Brave's offer and transmitted several documents to Brave as proof of a $9.5 settlement obtained by Defendant Pistotnik and other attorneys in a personal injury case in the 95th Judicial District in Dallas County, Texas. These documents include (1) a Compromise, Settlement, Release, and Indemnification Agreement ("Settlement Agreement") stating that total settlement was $9.5 million; (2) an agreement among the plaintiffs' counsel in that case documenting how fees would be split among them ("Fee Agreement"); and (3) two declarations from attorneys who worked on the case—David Hart and Michael Basset—authenticating the Settlement Agreement and the Fee Agreement.

The Settlement Agreement provides lump sum and periodic payments to four individuals: (1) the plaintiff, J.P., (2) the plaintiff's wife, L.V., who is named as "intervenor," (3) and the plaintiff's two minor children (referred to collectively as "the Hart and Pistotnik plaintiffs"). The Fee Agreement states that attorneys John Budin, Hart, and Pistotnik will represent J.P., L.V., and one of his minor children "in their claim and lawsuit arising out of a motor vehicle accident that occurred on or about December 19, 1998." During the hearing, Hart testified that he, along with Pistotnik and Budin, represented four individuals—J.P., L.V., and their two minor children—all

---

[3] For example, one of the advertisements referenced by Brave in its response brief states, "Partial listing of Verdicts and Settlements of Bradley A. Pistotnik and Brian D. Pistotnik." Another states, "Here's a partial listing of verdicts and settlements of Bradley A. Pistotnik."

of whom are listed in the case caption of the Settlement Agreement. In his declaration, Hart states the following regarding Defendant Pistotnik's participation in the case:

> Brad Pistotnik was admitted Pro Hac Vice in the case filed in Dallas County District Court in 1999. Mr. Pistotnik was heavily involved in the work on the case on a near daily basis. Brad attended to the needs of the client, including driving to his house in western Kansas and rescuing him when his wife left him stranded in his home. The client was paralyzed, and wheel chair bound. Brad consulted with me by telephone almost daily, and usually several times per day. We had many meetings in Wichita and some in other cities in Kansas. Brad Pistotnik attended both mediations in the case, including one that lasted until around 11:00 P.M. Brad helped me gather the evidence needed to respond to the defendants Motion to Dismiss for Forum Non Conveniens, which was denied. Brad Pistotnik continuously represented our client and was an attorney of record from the beginning until the settlement was concluded and the case was dismissed. Brad was intimately involved with the case, and he performed a substantial portion of the work including, but not limited to, at least five depositions, multiple meetings with the client, complicated legal research and tactical strategy, drafting pleadings, motion practice, written discovery, and mediation practice. Brad Pistotnik materially participated in obtaining a $9,500,000 in settlement for a tractor-trailer accident at night.

Michael Bassett, counsel for one of the defendants, also commented on Defendant Pistotnik's participation in his Declaration. He states, "Brad Pistotnik was involved with the case on a regular basis, and he performed a significant portion of the work for his clients, including, but not limited to, deposition and mediation practice. Brad Pistotnik materially participated in obtaining a $9,500,000 in settlement for a tractor-trailer accident at night."

On August 29, 2019, Brave responded to TALG. Brave confirmed that the settlement offer remained open but disagreed that the documents submitted by TALG satisfied its offer. Brave therefore refused the dismiss the case. TALG subsequently filed the current Motion to Enforce the Settlement Agreement. Brave responded to the motion, and additionally, asked the Court to allow it to conduct further discovery regarding the amount actually paid to the Hart and Pistotnik plaintiffs under the Settlement Agreement.

## II. Analysis

"A trial court has the power to summarily enforce a settlement agreement between the parties to a case which is still pending in that court."[4] A settlement agreement is a contract, and therefore, "[i]ssues involving the formation, construction, and enforceability of a settlement agreement are resolved by applying state contract law."[5] In Kansas, the existence of a settlement agreement is a question of fact, and the Court must conduct an evidentiary hearing if "the parties raise material factual disputes over whether an agreement has been reached and what the terms of the agreement are."[6] A settlement agreement is enforceable if there has been a meeting of the minds on all essential terms.[7]

As noted above, the Court held an evidentiary hearing on TALG's motion on February 4, 2020. During that hearing, the parties agreed that the settlement terms are set forth in the Report on Parties' Planning Conference. That document states that Brave "agreed to dismiss this lawsuit upon receipt of authenticated, admissible proof that the $9,000,000 and/or $9,500,000 settlement advertised by all of the Defendants occurred as advertised." This type of agreement is a unilateral contract.

---

[4] *Lowery v. Cty. of Riley*, 738 F. Supp. 2d 1159, 1167-68 (D. Kan. 2010) (citing *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004); *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993)).

[5] *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000).

[6] *Tsys Merchant Sols., LLC v. Pipeline Prods., Inc.*, 2016 WL 4702419, at *3 (D. Kan. 2016) (citations omitted).

[7] *See U.S.D. No. 446 v. Sandoval*, 295 Kan. 278, 286 P.3d 542, 546 (2012) (citing *Albers v. Nelson*, 248 Kan. 575, 809 P.2d 1194, 1198 (1991)).

A unilateral contract is one in which "one party makes a promise in exchange for the other party's performance rather than a corresponding promise."[8] The Kansas Court of Appeals has provided the following example regarding the formation of a unilateral contract:

> A classic example of a unilateral contract involves one person who says to another, "If you will walk across the Brooklyn Bridge I will pay you $100." The person making the promise wants performance in return, not merely the promise of action. The contract is formed when the second person performs by walking across the bridge.[9]

With a unilateral contract, "a compliance with the request in the offer fulfills the double function of a manifestation of acceptance and of giving consideration."[10]

TALG contends that an enforceable unilateral contract was formed when it sent the Settlement Agreement, the Fee Agreement, and the declarations to Brave. But Brave denies that these documents constitute an acceptance of its offer because (1) the settlement was not obtained on behalf of a single client as TALG's advertisements indicate; (2) the settlement was for all the claims in the case, not just those asserted by the Hart and Pistotnik plaintiffs; (3) the documents do not show that Defendant Pistotnik participated in obtaining the settlement for all of the plaintiffs; and (4) the actual settlement amount was less than $9.5 million. This memorandum will address each of these arguments.

**A.     The advertisements do not refer to a single client.**

Brave first argues that that the Court should deny TALG's motion because the settlement was not obtained on behalf of a single client as advertised. The only language Brave points to in

---

[8] *Smith v. Kan. Orthopaedic Ctr, P.A.*, 49 Kan. App. 2d 812, 316 P.3d 790, 795 (2013).

[9] *Id*. at 795 (citation omitted).

[10] *Quilty v. New York Life Ins. Co.*, 153 Kan. 129, 109 P.2d 215, 220 (1953) (quoting Restatement, Contracts, § 56, Comment A.).

support of this argument is found in the television advertisement. The disclaimer at the beginning of that advertisement states that "[t]he client results from stated verdicts or settlements are real amounts." This single statement is not enough for the Court to conclude that TALG advertised obtaining verdicts or settlements for only one individual. The term "client" is used as an adjective, and not a noun, in the advertisement. Thus, the term may refer to a single person or multiple persons. The Court has reviewed the remaining advertisements referenced by the parties during oral argument and in their briefs. None of these advertisements contain any language stating that TALG obtained a $9 million settlement on behalf of a single person. Therefore, the Court cannot deny TALG's motion on this basis.[11]

**B.  The settlement agreement only relates to the Pistotnik and Hart plaintiffs.**

Brave next argues that the $9.5 million settlement was for all the claims in the case, not just the claims of the Pistotnik and Hart plaintiffs. In support of this argument, Brave states that there are seven individuals listed as either the plaintiff or the intervenor in the case caption of the Settlement Agreement. It also has produced a second amended plea in intervention from that case, which was made on behalf of four additional individuals. Finally, Brave points to language in paragraph 2 of the Settlement Agreement, which states that "[t]he total settlement amount of the above stylized cause is $9,500,000.00 (NINE MILLION FIVE HUNDRED THOUSAND DOLLARS)." Brave argues that by referencing the "above stylized cause," the Settlement

---

[11] During the hearing, Brave argued that the language of the advertisements is irrelevant because in its Answer to the Amended Complaint, TALG admitted that "[t]he $9.5 settlement was and is real and was obtained by Brad Pistotnik and his co-counsel on behalf of a former *client*." (emphasis added). Brave argues that this statement is a party admission that TALG has advertised that the settlement was obtained for a single client. The Court rejects this argument. The settlement offer requires TALG to submit proof of a settlement that is consistent with its advertisements. The Court can make its own conclusions regarding what the advertisements say, and it finds that they do not advertise obtaining a settlement for a single client.

Agreement actually encompasses all 11 individuals making claims against the defendants in the case.

This argument is not persuasive. The Settlement Agreement defines the term "Plaintiff" as "O.G.O., also known as J.P., Individually, and as Next Friend of . . ., Minor Children." It defines the term "Intervenor" as "M.M.H. also known as L.V." The Payees identified in the Settlement are only J.P., L.V., and the two minor children, and the Settlement Agreement does not refer to the other intervenors in any place other than the case caption. Consistent with the language of the Agreement, Hart testified at the hearing that the Settlement Agreement only settled the claims of the Hart and Pistotnik plaintiffs and not the claims of the other intervenors. Thus, the Court finds that the Settlement Agreement did not encompass the claims of all 11 individuals identified in the case caption.

**C.     Pistotnik participated in the litigation and the settlement.**

Brave also argues that the documents submitted by TALG do not show that "Pistotnik – whose name appears nowhere in the Release – ever obtained a $9,000,000 or $9,500,000 settlement for a client – singular – as advertised." Brave argues that the documents show, at best, that Pistotnik had some involvement with the plaintiff J.P. Again, Brave's argument is not persuasive.

TALG submitted the Hart and Bassett declarations as evidence of Pistotnik's involvement in the litigation. According to Hart, Pistotnik was intimately involved with the case. He drafted pleadings and motions, participated in depositions, and materially participated in the mediation resulting in the $9.5 million settlement. Similarly, Bassett states that Pistotnik was involved in the case on a regular basis and performed a substantial portion of the work including deposition and

mediation practice. He specifically states that Pistotnik materially participated in obtaining the $9.5 million settlement.

As to Brave's claim that Pistotnik only represented J.P., the Court acknowledges that the Fee Agreement is only signed by J.P., and not L.V. or the two minor children. It also acknowledges that the Fee Agreement only references one minor child and not two. However, TALG presented testimony at the hearing from Hart that he and Pistonik, along with Budin, represented all four individuals and not just J.P. Given that the litigation occurred 20 years ago, Hart could not remember whether L.V. was pregnant at the time the Fee Agreement was signed, which would explain why the fourth minor child was not included in that agreement but included in the Settlement Agreement. Regardless of whether Pistotnik only represented J.P. or all four of the Hart and Pistotnik plaintiffs, the settlement offer does not specify how many individuals Pistotnik was required to represent. It only required that TALG offer proof that the $9.5 million settlement occurred as advertised. TALG has provided sufficient evidence that Pistotnik represented at least one, if not four, clients in the underlying litigation and participated in obtaining the $9.5 million settlement. Accordingly, the Court rejects Braves' argument.

**D.    The Settlement Amount**

Brave's final argument is that the settlement was for a dollar amount much less than $9.5 million. In Section 2 of the Settlement Agreement, titled "Payments," the first two lines state, "The total settlement amount of the above styled cause is $9,500,000.00 (NINE MILLION FIVE HUNDRED THOUSAND DOLLARS)." Brave argues, however, that based on subsequent paragraphs in Section 2, the total settlement for the Hart and Pistotnik plaintiffs was actually $5,135,898.

The first paragraph on page 5 of the Settlement Agreement states that the two defendant insurance companies agree to pay the "sums outlined in this Section 2.0, 2.1, 2.2, 2.3, and 2.4 below." Paragraphs 2.0 and 2.1 of the Settlement Agreement state:

> 2.0  At the time of the settlement, [defendant A. insurance company] agrees to pay the sum of $1,405,000.00 on behalf of J.P., the minor children [,] [sic] L.V. and their attorney David Hart. Plaintiff and Intervenor shall be solely responsible to satisfy out of said payment any and all attorney's fees and expenses and any liens which may be enforceable with respect to the proceeds of this settlement.
>
> [Defendant B. insurance company], on behalf of the Defendants, agrees to pay to the individual(s) named below (the "Payee(s)") the sums outlined in this Section 2.1, 2.2, 2.3 and 2.4 below:
>
> Payments due at the time of settlement are as follows:
>
> 2.1 The sum of $3,730,898.00 will be paid on behalf of J.P., the minor children, L.V. and their attorney David Hart. Plaintiff and Intervenor shall be solely responsible to satisfy out of said payment, any and all attorney's fees and expenses and any liens which may be enforceable by their attorney as well as any other liens which might be enforceable with respect to the proceeds of this settlement.

Paragraphs 2.2, 2.3, and 2.4 then specify the periodic payments to be made to J.P., L.V. and the two minor children.

Brave argues that the $3,730,898.00 lump sum payment set forth in paragraph 2.1 was paid by the insurance companies to fund the periodic payments set forth in paragraphs 2.2, 2.3, and 2.4. Brave thus argues that the two amounts set forth in paragraphs 2.0 and 2.1 are the total amount paid to settle the claims. This amount adds up to $5,135,898.00, not $9.5 million. According to Brave, the balance of the total of the $9.5 million settlement was paid to settle the remaining claims advanced by the seven other plaintiffs/intervenors in the lawsuit.

The Court does not agree with Brave's interpretation of the Settlement Agreement. The periodic payments set forth in paragraphs 2.2 through 2.4 are separate and distinct, as evidenced by the language of the Settlement Agreement itself. First, paragraph 2.1 states that the lump sum

of $3,730,898 is "due at the time of settlement." Thus, this lump sum could not be used to fund the periodic payments. Second, paragraph 2.0 states that the defendant insurance companies agree to pay the "sums outlined in this Section 2.0, 2.1, 2.2, 2.3 **and** 2.4." The term "and" shows that the payments in paragraphs 2.2, 2.3, and 2.4 are separate from the lump sum payment of $3,730,898 set forth in paragraph 2.1. And third, paragraph 5.1 permits defendant Insurance Company B. to assign its obligations in 2.2 through 2.4 to three separate and distinct entities.

Admittedly, TALG does not know why the Settlement Agreement states that the total settlement amount is $9.5 million but the total of the lump sum payments in paragraphs 2.0 and 2.1 and the periodic payments in 2.2 through 2.4 do not add up to this amount. According to TALG, the periodic payments alone had a minimum guaranteed face value of $9,794,526.23, making the total settlement amount $14,930,424.23. This is far more than the $5 million Brave suggests as the overall settlement amount.

To grant TALG's motion, the Court need only find colorable evidence that the settlement amount was $9.5 million. TALG has satisfied this burden. The Settlement Agreement explicitly states that the total settlement amount was $9.5 million. Hart testified at the hearing that the settlement amount was $9.5 million, and that he was certain of this amount because it was the highest amount he had ever obtained for a client as of that date and because of the nature of the negotiations proceeding it. Furthermore, a declaration from opposing counsel in the litigation states that the settlement amount was $9.5 million. The Court is not persuaded by Brave's argument that the actual settlement amount was less than $9.5 million.

### III. Conclusion

Overall, the Court concludes that TALG has satisfied the terms of Brave's settlement offer. Specifically, TALG has provided "authenticated, admissible proof that the $9,000,000 and/or

$9,500,000 settlement advertised by all of the Defendants occurred as advertised." The Settlement Agreement memorializes a $9.5 million settlement. The Bassett and Hart Declarations authenticate the Settlement Agreement, the Fee Agreement, and further demonstrate that the Hart and Pistotnik plaintiffs received $9.5 million in settlement for their claims. The Court will enforce the settlement agreement between the parties and dismiss this case. Brave is not entitled to any further discovery.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Enforce Settlement Agreement (Doc. 90) is **GRANTED**. The Court finds that the parties have entered into a binding settlement agreement, and in accordance with the terms of that agreement, this action is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Discovery (Doc. 134) is **DENIED as MOOT**.

**IT IS SO ORDERED**.

This case is closed.

Dated this 12th day of February, 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE